145.    Further, even if Defendants were only using the names GEMMA GUCCI and/or JENNIFER GUCCI, without also using other iconic Gucci designs like the GREEN-RED-GREEN Stripe Design, the REPEATING GG Pattern Design, and the GUCCI font, there still would be a high likelihood that consumers would believe that Defendants' products had been approved and/or sponsored by Gucci. Certainly, the less sophisticated client who sees these products, and doesn't know the GUCCI product line as well, will immediately believe they are associated with Gucci, merely because they carry the GUCCI name, and will purchase them believing that Gucci is the source of these goods. Gucci's more sophisticated clients are also quite likely to be deceived if they see products like these in the marketplace bearing the GUCCI name; however, even if they are astute enough to realize that ice cream products bearing the name GEMMA GUCCI or bedding products bearing the name JENNIFER GUCCI were not licensed or approved by Gucci, the mere fact that Gucci is allowing such products to be sold would cause these customers to think less of Gucci and its brand image, to the point where they might even consider switching their allegiance to one of Gucci's competitors. Novak Witness Statement at ¶10.

## II.    GUCCI'S PROPOSED CONCLUSIONS OF LAW

### A.    Jurisdictional Basis for Gucci's Claims

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) as the parties claims arise under federal law, and pursuant to 28 U.S.C. § 1367 under the principles of pendent jurisdiction for the claims arising under the laws of the State of New York. *See, e.g., Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 375-77 (S.D.N.Y. 2000).

2.    This Court has jurisdiction over Defendants by virtue of the fact that their

infringing activities have caused harm in the Southern District of New York, where Gucci's

business is located. *See, e.g., Savage Universal Corp. v. Grazier Constr., Inc.,* 04 Civ. 1089

(GEL), 2004 U.S. Dist. LEXIS 16088, at *29-30 (S.D.N.Y. Aug. 13, 2004) (affirming

jurisdiction in New York because "the 'first effects' of trademark infringement or dilution are

typically felt where the trademark owner resides and conducts business, and can include injury in

the form of damage to goodwill, lost sales, or lost customers"); *National Football League v.

Miller,* 99 Civ. 11846 (JSM), 2000 U.S. Dist. LEXIS 3929, at *5-6 (S.D.N.Y. Mar. 30, 2000)

(exercise of jurisdiction is consistent with due process where the defendant profited from activity

that damaged the plaintiffs in New York); *see also* Joint Pre-Trial Order at ¶1; Pl. Proposed

Findings at ¶1.

3.    Moreover, this Court has personal jurisdiction over the Defendants by virtue of

their consent to the terms of the Stipulated Preliminary Injunction Order. *See, e.g., Aeration

Solutions, Inc. v. Dickman,* Civ. No. 03-1284, 85 Fed. App'x 772, 775 (Fed. Cir. Jan. 15, 2004)

("[T]his court can think of few actions that more clearly signal an acceptance of a court's

jurisdiction than signing a stipulated injunction order. Such an action, without reservation,

expressly indicates a party's willingness to submit itself to the equitable powers of the court")

(citing *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58 (2d Cir. 1999); *Lomaglio Assocs. v. LBK

Mktg. Corp.,* 876 F. Supp. 41 (S.D.N.Y. 1995)).

**B.    Gucci's Claims — Generally**

4.    As a matter of law, the evidence presented at trial, taken as a whole, is legally

sufficient to support a finding in favor of Gucci on Claims 1 - 8 of its Amended Complaint; and,

therefore, Claims 1 - 8 should be granted and judgment entered in favor of Gucci and against

Defendants Jennifer Gucci, Edward Litwak d/b/a Ed Litwak & Associates and Gemma Gucci.

### C. Gucci's Claims For Trademark Infringement and False Designation of Origin Under Sections 32(1) and 43(a) of the Lanham Act Should be Granted as Gucci has Demonstrated that it has Valid Marks That are Entitled to Protection and Defendants Have Infringed One or More of Those Marks

5.      In this action, Gucci seeks, *inter alia*, relief for infringement and counterfeiting of

one or more registered trademarks under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114, and

unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), respectively.  15

U.S.C. § 1114; 15 U.S.C. § 1125(a).  Gucci also seeks an injunction against any commercial use

by Defendants of the names JENNIFER GUCCI and GEMMA GUCCI in connection with the

sale of any products or services.

6.      Section 32 of the Lanham Act protects, among other things, against the

unauthorized use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a

registered mark in connection with the sale, offering for sale, distribution, or advertising of any

goods on or in connection with which such use is likely to cause confusion, or to cause mistake,

or to deceive." 15 U.S.C. § 1114(1)(a).

7.      Section 43(a) of the Lanham Act protects both registered and unregistered marks

against the use of "any word, term, name, symbol, or device, or any combination thereof" which

"is likely to cause confusion, or to cause mistake, or to deceive as to the *affiliation, connection,*

*or association* of such person with another person, or as to the origin, sponsorship, or approval of

his or her goods, services, or commercial activities by another person." 15 U.S.C. §

1125(a)(1)(A) [emphasis added].

8.    In order to prevail on its claims under either of these sections, a plaintiff must demonstrate that (1) it has a valid mark that is entitled to protection under the Lanham Act, and (2) use of the defendant's mark is likely to cause confusion with plaintiff's mark. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *Time, Inc. v. Peterson Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999); *Lexington Mgt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 277 (S.D.N.Y. 1998).

### 1.    Gucci's Trademarks Are Valid

9.    Under Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), a certificate of registration of a trade or service mark issued by the United States Patent and Trademark Office is "*prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b); *see also Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2d Cir. 2004) (registered trademarks should be "afforded utmost protection"); *The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 137 (2d Cir. 1999) (noting that marks are valid and entitled to protection under the Lanham Act where the marks are registered on the Principal Register of the United States Patent and Trademark Officer).

10.    Moreover, federally registered marks are also conclusive evidence of the registrant's exclusive right to use those marks. 15 U.S.C. § 1115(b); *GMA Accessories, Inc. v. BOP LLC*, 07 Civ. 3219 (LTS) (DCF), 2007 U.S. Dist. LEXIS 64386, *5 (S.D.N.Y. Aug. 29, 2007).

11.    Gucci is the owner of all right, title and interest in and to, *inter alia*, the following federally registered trademarks and/or service marks in the United States:

| Mark | Reg. No. | Reg. Date | Class(es) |
|---|---|---|---|
| GUCCI | 876,292 | 09/09/69 | 16, 18, 21, 25 |
| | 959,338 | 05/22/73 | 14 |
| | 972,078 | 10/30/73 | 42 |
| | 1,093,769 | 06/20/78 | 16 |
| | 1,140,598 | 10/21/80 | 3 |
| | 1,168,477 | 09/08/81 | 25 |
| | 1,169,019 | 09/15/81 | 9 |
| | 1,168,922 | 09/15/81 | 6 |
| | 1,200,991 | 07/13/82 | 14 |
| | 1,202,802 | 07/27/82 | 25 |
| | 1,321,864 | 02/26/85 | 9 |
| | 1,340,599 | 06/11/85 | 14 |
| GREEN-RED-GREEN STRIPE DESIGN  | 1,122,780 | 07/24/79 | 18 |
| | 1,123,224 | 07/31/79 | 14 |
| | 1,483,526 | 04/05/88 | 25 |
| REPEATING GG PATTERN DESIGN  | 2,680,237 | 01/28/03 | 14 |
| | 3,072,547 | 03/28/06 | 25 |
| | 3,072,549 | 03/28/06 | 18 |

*See* Pl. Proposed Findings at ¶19, Pl. Exs. 206 - 223. All of the foregoing registrations are valid,

subsisting, and in full force and effect, and "are presumed to be distinctive and should be

afforded the utmost protection." *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d

867, 871 (2d Cir. 1986); *Lexington Mgt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d

271, 277 (S.D.N.Y. 1998).

     12.    Moreover, many of the registrations for the Gucci Trademarks are incontestable

pursuant to 15 U.S.C. §§ 1065 and 1115(b), and, therefore, constitute "conclusive evidence" of

the marks' "validity . . . and of the registrant's ownership of the mark[s] . . . [and] exclusive right

to use the mark[s]." 15 U.S.C. § 1115(b); *see also Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993).

      13.    Further, courts have repeatedly recognized that the Gucci Trademarks are strong and famous, and therefore are entitled to the broadest scope of protection. *See, e.g., Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1063-64 (S.D.N.Y. 1991) (finding that Gucci marks are not only "clearly fanciful," "strong," and have "secondary meaning," but also that the association with Gucci "overshadows the characteristics of the goods themselves"); *Gucci Am., Inc. v. Dart, Inc.*, 715 F.Supp. 566, 569 (S.D.N.Y. 1989) (determining that Gucci's "green-red-green stripe device is a strong mark"); *Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. 1988) (finding that "the Gucci repeating diamond "GG" design is a distinctive mark that is associated in the minds of the public with 'Gucci'" and that the "Gucci" mark is "a well-known mark internationally and is, therefore, entitled to 'strong protection'"); *Gucci Shops, Inc. v. Dodo Mark 1 S.r.l.*, No. 84 Civ. 2089, 1984 WL 322, at *1 (S.D.N.Y. May 4, 1984) (finding that the Gucci Marks are "well known" trademarks); *Gucci Shops, Inc. v. R.H. Macy & Co., Inc.*, 446 F. Supp. 838, 839 (S.D.N.Y. 1977) (Gucci name and green-red-green stripe "clearly identify the product with the plaintiff"); *Gucci Am., Inc. v. Pieta*, No. Civ. 04-9626, 2006 WL 4725706, at *1 (C.D.Cal. January 23, 2006) (noting that the Gucci marks are famous); *Gucci Shops, Inc. v. Dreyfoos & Assocs., Inc.*, Case No. 83-709-CIV-ALH, 1983 WL 425, at *1-2 (S.D. Fla. Nov. 7, 1983) (because Gucci's "extensive media advertising reaches millions of retail customers throughout the United States," the "Gucci Marks have acquired and now enjoy distinctiveness, goodwill, and secondary meaning").

### 2. There is a Likelihood of Confusion Between the Gucci Trademarks, Including the GUCCI Brand Name, and the Commercial Use of the Names JENNIFER GUCCI and GEMMA GUCCI

14.     The Lanham Act "outlaw[s] the use of trademarks which are likely to cause confusion, mistake or deception *of any kind*, not merely of purchasers nor simply as to course of origin." *Syntax Labs, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 568 (2d Cir. 1971) (emphasis added).

15.     A *prima facie* case for a claim for infringement of a registered trademark under Section 32 of the Lanham Act, as well as a claim for false designation of origin under Section 43(a) of the Lanham Act, "is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

16.     For purposes of establishing a likelihood of confusion under the Lanham Act, a party need not prove *direct confusion*, *i.e.*, that consumers believe the product in question is the owner's product, but may show *association confusion*, namely that the consumer believes the use in question is sponsored by, affiliated with, connected to and/or approved by the trademark owner. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) (citations omitted) (noting that "a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement"); *McDonald's Corp. v. McBagel's Inc.*, 649 F. Supp. 1268, 1273 (S.D.N.Y. 1986) (noting that a likelihood of confusion refers to confusion of any type, "including confusion of source, sponsorship, affiliation, connection, or identification"); *see also* PUB. L. 100-667 § 132.

17. Further, "even if consumers do not consciously assume that the defendant's product is somehow affiliated with plaintiff's product, there is the likelihood that consumers will be attracted to defendant's product on the strength of the goodwill and positive image established by plaintiff." *Stern's Miracle-Gro Prods., Inc. v. Shark Prods. Inc.*, 823 F. Supp. 1077, 1090 (S.D.N.Y. 1993); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 869 (2d Cir. 1986) (taking into account that the "two patterns are virtually identical when viewed from any appreciable distance"). This is especially true where a defendant, as here, is claiming to be a designer and is claiming to sell "designer" products. *Emilio Pucci Societa A Responsibilita Limitata v. Pucci Corp.*, 1988 U.S. Dist. LEXIS 14097, at *11-12 (N.D. Ill. Dec. 13, 1988) (noting that confusion "is heightened by the defendant's reference to its [alleged] reputation as a creator and designer of fashion . . . . Any reference to a fashion reputation is, if anything, going to increase the confusion resulting from the use of very similar marks"); *see also In re Leslie Fay Cos.*, 216 B.R. 117, 128, 132 (Bankr. S.D.N.Y. 1997); *Grotian, Helfferich, Schulz, Th. Steinweg Nacht. v. Steinway & Songs*, 523 F.2d 1331, 1341 (2d Cir. 1975).

18. Moreover, the confusion actionable under the Lanham Act is not limited to confusion at the instant of sale. Rather, it includes the "initial interest" confusion that occurs when a prospective customer mistakenly believes an infringer to be affiliated with, related to or sponsored by the plaintiff, even if that confusion is dispelled at a later time. *Jordache Enters., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506, 514-15 (S.D.N.Y. 1993). Where initial interest confusion exists, "[t]he harm to [the trademark owner] . . . is the likelihood that a consumer, hearing the [similar] name and thinking it had some connection with [the trademark owner] would consider the [product] on that basis. The [similar] name therefore would attract potential

customers based on the reputation built by [the trademark owner] in this country for many years."
*Grotian, Helfferich, Schulz, Th. Steinweg Nacht. v. Steinway & Songs*, 523 F.2d 1331, 1342 (2d Cir. 1975); *Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996).

19.    A proper likelihood of confusion analysis, whether conducted under the infringement (15 U.S.C. § 1114) or false designation of origin (15 U.S.C. § 1125(a)) prongs of the Lanham Act, *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003), looks at the factors set forth by the Second Circuit in *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961).

20.    The list of *Polaroid* factors to be considered in determining whether a likelihood of confusion exists includes (1) the strength of the senior user's mark; (2) the degree of similarity between the senior and junior users' marks; (3) the proximity of the services at issue; (4) the likelihood that the senior user will "bridge the gap" (to the extent that the services are dissimilar); (5) evidence of actual confusion; (6) the junior user's good faith in adopting the mark; (7) the quality of the junior user's services; and (8) the sophistication of prospective purchasers. *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961); *see also Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005); *New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183, 185 (2d Cir. 2001); *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 479-84 (2d Cir. 1996).

21.    The *Polaroid* eight-factor test is not a "rigid formula", *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986), in that "no one factor is determinative and the list [of relevant factors] is not exhaustive." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 2004 WL 2158120, at *4 (S.D.N.Y. Sept. 28, 2004), quoting *Pfizer, Inc. v.*

*Y2K Shipping & Trading, Inc.*, 2004 WL 896952, at *3 (E.D.N.Y. Mar. 26, 2004). Rather, the *Polaroid* factors are intended to act "as a useful guide" in determining if there exists a likelihood of confusion. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986).

22.    Here, a straightforward application of the *Polaroid* factors also demonstrates that the likelihood of confusion is extremely high.  Applying the relevant *Polaroid* factors to the evidence of record clearly establishes that Defendants have infringed Gucci's world famous GUCCI trademark, and are blatantly attempting to confuse and deceive consumers and the trade into believing that JENNIFER GUCCI and GEMMA GUCCI branded products are sponsored by, affiliated with and/or approved by Gucci — which they most definitely are not.  Moreover, Defendants Jennifer Gucci and Litwak have utilized a repeating JG pattern design and a green-red-green stripe design that are plainly copied from Gucci's federally-registered and internationally recognized REPEATING GG Pattern Design and GREEN-RED-GREEN Stripe Design marks.  Further, Defendant Litwak has openly admitted that the JENNIFER GUCCI products "will have a Gucci-esque look."  Thus, the evidence of record conclusively demonstrates that Defendants' use of the JENNIFER GUCCI and GEMMA GUCCI names, along with Defendants Jennifer Gucci and Litwak's imitations of other well-known Gucci Trademarks and indicia, are intended to cause, and indeed are likely to cause, confusion with the famous Gucci Trademarks. *See*, generally, Pl. Proposed Findings; Pl. Proposed Conclusions at ¶¶23 - 62; *The N.Y. State Soc'y of Certified Public Accountants v. Eric Louis Assocs., Inc.*, 79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999) (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)) (determining that where there is a showing that Defendants

intended to copy Plaintiffs' Marks, "likelihood of confusion will be presumed as a matter of law").

### i.    The Strength of the GUCCI Marks Favors A Finding of Likely Confusion

23.    "The strength of a mark is among the most important [of the *Polaroid*] factors . . . because the stronger the mark the more protection it is afforded." *T. Anthony Ltd. v. Louis Vuitton Malletier*, 30 U.S.P.Q.2d 1214, 1217 (S.D.N.Y. 1993) (citing *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1132-33 (2d Cir. 1979).

24.    "The strength of a particular mark . . . is measured by its distinctiveness or the degree to which it indicates the source as origin of the product", *Bristol-Myers Squibb Co. v. McNeil - P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir. 1992), and should be examined in its commercial context. *Centaur Communications, Ltd. v A/S/M Communications, Inc.*, 830 F.2d 1217, 1226 (2d Cir. 1987).

25.    Fanciful and arbitrary marks, such as the Gucci Trademarks, are inherently distinctive and afforded a wide scope of protection. *Fourth Toro Family L.P. v. PV Bakery, Inc.*, 88 F. Supp. 2d 188, 195 (S.D.N.Y 2000) ("H&H" is an arbitrary mark when used to indicate the source of bagels).

26.    Moreover, the Gucci Trademarks are incontestable, federally registered marks and, as such, are presumed distinctive and should be "afforded utmost protection." *See* Pl. Proposed Findings at ¶19, Pl. Exs. 206 - 223; 15 U.S.C. §§ 1057(b) and 1115(b); *Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2d Cir. 2004) (registered trademarks should be "afforded utmost protection"); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.

1987); *Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 305-06 (S.D.N.Y. 2007).

27.    Moreover, the commercial success of the Gucci Trademarks is also evidence of their strength. As a result of Gucci's extensive advertising and promotion, adherence to the highest quality standards, and extraordinary sales success, the Gucci Trademarks are among the most widely-recognized trademarks in the United States. The Gucci Trademarks possess strong secondary meaning among consumers and the trade, immediately identifying Gucci as the exclusive source of the products to which they are affixed, and signifying goodwill of incalculable value. *See* Pl. Proposed Findings ¶¶2 - 19; Pl. Exs. 230 - 234; *see also Charles of Ritz Group, Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1321 (2d Cir. 1987) (the "commercial success" of a product "reinforces the strength of [its] mark"); *Playtex Prods., Inc. v. First Quality Hygienic, Inc.*, 965 F.Supp. 339, 341-42 (E.D.N.Y. 1996); *McCarthy on Trademarks* § 11:73 (2007).

28.    As set forth *supra* at ¶13, this Court and others have repeatedly recognized that the Gucci Trademarks are famous, distinctive, and strong marks. *See, e.g., Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1063-64 (S.D.N.Y. 1991) (finding that Gucci marks are not only "clearly fanciful," "strong," and have "secondary meaning," but also that the association with Gucci "overshadows the characteristics of the goods themselves").

29.    Finally, that Defendants are attempting to capitalize on the popularity of the Gucci Trademarks by licensing, attempting to license and/or permitting various companies to utilize marks which are substantially similar to the Gucci Trademarks, in an effort to confuse and deceive consumers and the trade into associating the goodwill attached to the Gucci Trademarks

with JENNIFER GUCCI and GEMMA GUCCI products, is significant evidence of the strength

of the Gucci Trademarks. *See*, generally Pl. Proposed Findings; *see also Virgin Enters. Ltd. v.*

*Nawab*, 335 F.3d 141, 148 (2d Cir. 2003) ("[a] mark's fame also gives unscrupulous traders an

incentive to seek to create consumer confusion by associating themselves in consumers' minds

with a famous mark"); *see also Harlequin Enters., Ltd. v. Gulf & Western Corp.*, 644 F.2d 946,

950 (2d Cir. 1981); *Bertolli, USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203,

206-07 (S.D.N.Y. 1987).

> ii.    **The Similarity Between Defendants' Marks and the Gucci Trademarks Favors A Finding of Likely Confusion**

30.    The similarity of the marks is judged by "consider[ing] all factors that could

reasonably be expected to be perceived by and remembered by potential purchasers," including

the context in which the respective marks are generally presented." *Arrow Fastener Co. v.*

*Stanley Works*, 59 F.3d 384, 394 (2d Cir. 1995) (quotations omitted).

31.    "Rival marks are considered relevantly similar under the second *Polaroid* factor to

the extent that they create the same overall commercial impression when viewed separately." *T.*

*Anthony Ltd. v. Louis Vuitton Malletier*, 30 U.S.P.Q.2d 1214, 1217 (S.D.N.Y. 1993) ( citing

*Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.*, 680 F.2d 891 (2d Cir. 1982)); *American*

*Home Prods. Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir. 1978).

32.    The key inquiry is whether the overall impression of an alleged infringer's mark is

confusingly similar to the plaintiff's mark. *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d

1126, 1134 (2d Cir. 1979).

33.    Thus, as a matter of law, the similarity of the marks is judged "to the extent that they create the same overall commercial impression when viewed separately." *T. Anthony Ltd. v. Louis Vuitton Malletier*, 30 U.S.P.Q.2d 1214, 1217 (S.D.N.Y. 1993) (citations omitted).

34.    The proper test to be used is that of overall impression, not a side-by-side comparison by an attentive observer. *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 762 (2d Cir. 1960); *Citigroup Inc. v. City Holding Company*, 171 F. Supp. 2d 333, 347 (S.D.N.Y. 2001); *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1390 (Fed. Cir. 1989).

35.    The primary names in question here — JENNIFER GUCCI and GEMMA GUCCI on the one hand and GUCCI on the other hand — are, for all intents and purposes, identical. In the fashion industry, it is quite common for designers to be principally known and referred to by their surname. In such instances, the surname becomes the dominant part of a mark based on a designer's name. *See Gianni Versace S.p.A. v. Alfredo Versace*, No. 01 Civ. 9645, 2003 WL 22023946, at *9-10 (S.D.N.Y. Aug. 27, 2003) (finding that the similarity between the VERSACE marks and DESIGNED BY ALFREDO VERSACE or ALFREDO VERSACE, noting that "[b]oth marks have the surname 'Versace' as the 'focal point' of the designation. While Alfredo's mark includes the phrase "Designed by Alfredo" before the word "Versace," the dominant part of the mark is the surname. Because of the presence of the Versace name in Alfredo's mark, "consumers would be reasonably justified in believing both products come from the same [source]. This is especially true in the fashion industry, an industry in which it is common for designers to be referred to by only their surnames"); *see also Basile, S.p.A. v. Basile*, 899 F.2d 35, 38 (D.C. Cir. 1990) (holding confusion with the BASILE mark would not be avoided by adding junior user's location, "Venezia"); *Scarves by Vera, Inc. v. Todo Imports Ltd.*,

544 F.2d 1167, 1174-75 (2d Cir. 1976) (confusion will result from defendant's use of plaintiff's name on its products because "plaintiff appeals to the name-conscious customer . . . [and even though plaintiff] sells medium fashion apparel, plaintiff's reputation as a 'name' designer would, in all likelihood, lead many customers to think that cosmetics and fragrances sold under the 'VERA' trademark were manufactured by plaintiff").

36.     Here, the JENNIFER GUCCI and GEMMA GUCCI marks are highly similar, if not identical to, the GUCCI mark — the dominant part of the JENNIFER GUCCI and GEMMA GUCCI marks clearly being the "Gucci" surname, particularly in view of the strength and fame of the GUCCI mark. As in *Versace S.p.A.*, consumers will undoubtedly (but mistakenly) assume JENNIFER GUCCI and GEMMA GUCCI branded products are affiliated with, sponsored by or approved by Gucci, which most definitely is not the case. Accordingly, the similarity of the marks at issue supports a finding of a likelihood of confusion. *See, e.g., Gianni Versace S.p.A. v. Alfredo Versace*, No. 01 Civ. 9645, 2003 WL 22023946, at *9-10 (S.D.N.Y. Aug. 27, 2003).

### iii.    The Parties' Goods Are In Close Competitive Proximity of One Another and There Is No Gap To Bridge

37.     The competitive proximity analysis "requires inquiry into the classification of the products, the channels of trade through which the products move and their customer profiles." *Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 917 (S.D.N.Y. 1992).

38.     As explained by the Second Circuit in *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987), "competitive proximity must be measured with reference to the first two *Polaroid* factors" — *i.e.*, the stronger the Gucci Trademarks are and the greater degree of similarity that exists with Defendants' marks, then the less proximate the competing products need be to support a likelihood of confusion.

61

39.     The issue is "whether due to the commercial proximity of the competitive products, consumers may be confused as to their source." *Clinique Labs. Inc. v. Dep Corp.*, 945 F. Supp. 547, 553 (S.D.N.Y. 1996), (citing *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir. 1988).

40.     When weighing the competitive proximity factor, however, where the parties compete in the same market, there is no "gap to bridge", and this factor tips in favor of a likelihood of confusion. *Kookai, S.A. v. Shabo*, 950 F. Supp. 605, 608 (S.D.N.Y. 1997) (where "the fashion wear of both [parties] compete directly against one another" and targeted toward the same audience, "there is no 'gap' to bridge" and the factor "tips in favor of plaintiff").

41.     However, goods need not be the same, or even directly competitive, to be deemed sufficiently "related" for a confusingly-similar trademark to result in infringement. *See,* *McCarthy on Trademarks* § 24:24.  In determining the relation between products, courts have found likelihood of confusion between such varied goods and services as deli meats v. beer (*Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F. Supp. 966 (E.D.N.Y. 1994)); fast food restaurant v. motels (*Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F.Supp. 198, 221 (D.Md 1988)); scotch whiskey v. motel (*John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302 (D.C.S.C. 1969)); cars v. airplanes (*Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967)); magazine v. luggage (*Triangle Publ'ns Inc. v. Standard Plastic Prods.*, 241 F.Supp. 613 (E.D.Pa. 1965)); and floor wax and insecticide v. beer (*Chemical Corp. of Am. v. Anheuser-Busch, Inc.*, 306 F.2d 433 (5th Cir. 1962)).

42.    Here, the products in question — watches, jewelry, home products, and skincare and cosmetic products — are similar to and/or related to products marketed and sold under the Gucci Trademarks. *Kookai, S.A. v. Shabo*, 950 F. Supp. 605, 608 (S.D.N.Y. 1997).

43.    Moreover, even if this Court where to find that, with respect to certain of the products at issue, the parties were not in direct competition (*e.g.*, ice cream, gelato and wine sold under the JENNIFER GUCCI and/or GEMMA GUCCI brand names), as a matter of law, it is well established that parties need not be in competition and that the goods or services need not be identical for the Court to find a likelihood of consumer confusion and issue an injunction, particularly where the senior user's mark is strong. *See, e.g., Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F. Supp. 966 (E.D.N.Y. 1994) (deli meats v. beer); *Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F.Supp. 198, 221 (D.Md 1988) (fast food restaurant v. motels); *John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302 (D.C.S.C. 1969), (scotch whiskey v. motel); *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir. 1967) (cars v. airplanes); *Triangle Publ'ns Inc. v. Standard Plastic Prods.*, 241 F.Supp. 613 (E.D.Pa. 1965) (magazine v. luggage); *Chemical Corp. of Am. v. Anheuser-Busch, Inc.*, 306 F.2d 433 (5th Cir. 1962) (floor wax and insecticide v. beer).

44.    In addition, Gucci, over the years Gucci has sold a wide variety of products under the famous GUCCI mark, such as handbags, luggage, men's apparel, women's apparel; apparel accessories, sunglasses, footwear, jewelry, watches, fragrances, home products and even automobiles. Accordingly, when consumers encounter the GUCCI name used in association with hotels, wine, furniture, ice cream, gelato and coffee, they are likely to assume that these are new

brand extensions from Gucci. *Guiness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*,

No. 02 CIV. 0861(LMM), 2002 WL 1543817, at *4 (S.D.N.Y. July 12, 2002).

### iv.    There Is Evidence of Actual Confusion

45.    Although "[i]t is black letter law that actual confusion need not be shown to

prevail under the Lanham Act", *Savin Corp. v. Savin Group*, 391 F.3d 439, 459 (2d Cir. 2004),

citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986), if

present, actual confusion is a very strong indicator of likelihood of confusion. *See, e.g.,*

*Conopco, Inc., v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 251 (S.D.N.Y. 1999).

46.    Moreover, it is well-settled that a knowing or deliberate infringement of another's

trademark rights creates a strong presumption of a likelihood of confusion. *Centaur Commc'ns,*

*Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1228 (2d Cir. 1987); *GTFM, Inc. v. Solid Clothing*

*Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) ("[w]here a second-comer acts in bad faith and

intentionally copies a trademark or trade dress . . . a presumption arises that the copier has

succeeded in causing confusion").

47.    Here, Gucci is aware of a number of instances of actual confusion with respect to

Defendants' activities.  For example, various websites, including <www.gucci-

news.newslib.com>; <www.transnationale.org> and <www.zib.com>, that collect information

and news about Gucci and the GUCCI brand, have listed articles and press releases concerning

the activities of Veratex and Louisville Bedding as being recent news about Gucci.  In addition,

in 2007, GEMMA GUCCI gelato products were featured in a report broadcast by KNXV-TV, the

local ABC television affiliate in Phoenix, Arizona and a copy of that broadcast was subsequently

placed on the website of SHD Marketing on a page featuring a description of the GEMMA

GUCCI gelato product.  During the news segment, the reporter indicates that the gelato product

comes from the Gucci company. Pl. Tr. Exs. 55-56, 190; *Gucci v. Gucci Shops, Inc.*, 688 F.
Supp. 916, 926 (S.D.N.Y. 1988) ("'there can be no more positive proof of likelihood of
confusion than evidence of actual confusion'"), quoting, *Lawn Tennis Assoc. v. British Tennis
Agency*, 1 U.S.P.Q.2d 1283, 1288 (S.D.N.Y.1986).

### v.    Defendants Have Acted in Bad Faith

48.    The "bad faith" factor considers "whether the defendant adopted its mark with the
intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and
the senior user's product." *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir.
1991).

49.    A defendant's awareness of a plaintiff's prior use of a given mark to identify itself
"can give rise to an inference of bad faith, [and] [t]his inference [can be] bolstered by the further
finding that [the defendant] proffered no credible innocent explanation for the [use of the
plaintiff's mark]." *New York State Soc'y of Certified Public Accountants v. Eric Louis Assocs.,
Inc.*, 79 F. Supp. 2d 331, 348 (S.D.N.Y. 1999) (citations omitted); *see also Mobil Oil Corp. v.
Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987) (noting that "actual or constructive
knowledge may signal bad faith").

50.    Here, there can be no doubt that Defendants are intending to create confusion
through their use of the JENNIFER GUCCI and GEMMA GUCCI brand names, and imitation of
well-known Gucci Trademarks, designs and indicia. Even a cursory review of Defendants'
packaging reveals this. In addition, Defendants have presented the JENNIFER GUCCI and
GEMMA GUCCI names in gold-tone, capitalized lettering, mimicking the manner in which the
GUCCI brand name is presented to consumers. Moreover, Defendants Jennifer Gucci and
Litwak are utilizing a repeating JG design and green-red-green stripe design that are plainly

65

copied from Gucci's federally-registered and internationally recognized REPEATING GG

Pattern Design and GREEN-RED-GREEN Stripe Design marks:



| Defendants' Trademarks | Gucci's Trademarks |
|---|---|

*See* Pl. Tr. Exs. 22, 32 and 45.

    51.    Further, there is a multitude of additional evidence demonstrating Defendants bad

faith. For example, Defendant Litwak has openly admitted that the JENNIFER GUCCI products

"will have a Gucci-esque look." Pl. Tr. Ex. 28; *see also The N.Y. State Soc'y of Certified Public*

*Accountants v. Eric Louis Assocs., Inc.*, 79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999) (citing *Mobil*

*Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)) (determining that

where there is a showing that Defendants intended to copy Plaintiffs' Marks, "likelihood of confusion will be presumed as a matter of law").

52.    Moreover, Defendants are well aware that the use of the JENNIFER GUCCI and GEMMA GUCCI names are likely to cause confusion among consumers — in fact, this is Defendants' intended goal. For many years both Jennifer Gucci and Gemma Gucci — who were never affiliated with the Gucci company and, by their own admissions, have no reputation as a designers of consumer products in the United States — have been trying to take advantage of and exploit their famous last name. *See*, generally, Pl. Proposed Findings; Deposition Testimony of Litwak.

53.    In an effort to take advantage of their celebrated last name, both Jennifer Gucci and Gemma Gucci have employed Defendant Litwak, formerly Paolo Gucci's agent, to act as their licensing agent. Both Jennifer Gucci and Gemma Gucci have given Litwak the exclusive right to license their names in connection with a wide variety of consumer products, including, but not limited to, handbags, jewelry, watches, home products, spa and bath products, furniture, ice cream, gelato, water, casinos and hotels. *See* generally, Pl. Proposed Findings.

54.    In an effort to take advantage of their celebrated last name, Jennifer Gucci, Gemma Gucci and/or their representatives, including Litwak, have sought to register the following trademarks in the United States for a variety of goods and services: COLLEZIONE DI JENNIFER GUCCI; (Application Number 75/446,501 dated March 9, 1998); COLLEZIONE DI JENNIFER GUCCI (Application Number 75/446,502 dated March 9, 1998); JENNIFER DESIGNED BY JENNIFER GUCCI (Application Number 76/228,124 dated March 22, 2001) ; GEMMA GUCCI (Application Number 78/173,379 dated October 11, 2002); GEMMA GUCCI

67

(Application Number 78/695,443 dated August 18, 2005); and REBEL GUCCI (Application

Number 78/695,464 dated August 18, 2005). However, the Trademark Office has refused

registration of each of these marks, indicating that the applied-for marks would be confusingly

similar to one or more of the famous registered GUCCI trademarks (*see*, Pl. Proposed Findings at

¶19), and each of these applications was abandoned. *See*, Pl. Tr. Exs. 90 - 93, 224 - 229.

     55.     Further, in this case, there is overwhelming evidence of the Defendants' intent to

copy or trade upon Gucci's goodwill that makes "the conclusion that [Defendants] wanted the

public to identify its merchandise with [the Plaintiffs'] trademarks . . . inescapable." *NBA*

*Properties, Inc. v. YMG, Inc.*, No. 93 C 1533, 1993 WL 462836, at *3 (N.D. Ill. Nov. 9, 1993);

*see also Dreyfus Fund Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108, 1122 (S.D.N.Y. 1981).

This showing of bad faith entitles Plaintiffs to a presumption of confusion in the marketplace.

*See, e.g., Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir. 1980), *cert.*

*denied*, 459 U.S. 832 (1982) ("If there was intentional copying the second comer will be

presumed to have intended to create a confusing similarity of appearance and will be presumed to

have succeeded"); *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 132

(S.D.N.Y. 1993) (courts may infer intent to capitalize on the plaintiff's goodwill "[w]hen a

company appropriates an identical mark that is well known and has acquired a secondary

meaning"); *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) (where

similarities "are so strong that they could only have occurred through deliberate copying . . . a

presumption arises that the copier has succeeded in causing confusion"); *Gucci Am., Inc. v.*

*Action Activewear, Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991) ("Where the evidence

'show[s] or require[s] the inference that another's name was adopted deliberately with a view to

obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit'"); *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 140 (2d Cir. 1991) ("Once it is shown that a defendant deliberately engaged in a deceptive commercial practice, . . . a powerful inference may be drawn that the defendant has succeeded in confusing the public. Therefore, upon a proper showing of such deliberate conduct, the burden shifts to the defendant to demonstrate the absence of consumer confusion").

### vi.    Defendants' Goods Are Of An Inferior Quality Than Gucci's

56.    If Defendants' products are inferior, this *Polaroid* factor weighs in favor of Gucci. *See Consolidated Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188, 199 (S.D.N.Y. 1999); *Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. at 1066 ("the existence of inferior infringing goods strengthens a plaintiff's 'interest in protecting its reputation from debasement' ") (citation omitted); *see also Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78 (2d Cir. 1988); *Centaur Communications, Ltd. v A/S/M Communications, Inc.*, 830 F.2d 1217, 1228 (2d Cir. 1987); *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

57.    More importantly, however, where, as here, a plaintiff has no control over the production, advertising, or marketing of a defendant's goods, and cannot attest to the quality of the goods, their advertising and marketing materials, or the promotions connected to their products, this *Polaroid* factor weighs strongly in favor the plaintiff. *See, e.g., Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 62, *amended by*, 1992 U.S. App. LEXIS 32204 (2d Cir. 1992),

*aff'd*, 37 F.3d 74 (2d Cir. 1994). Accordingly, because Gucci has no control over the quality of Defendants' products, this factor further supports a finding of likelihood of confusion.

### vii.    The Sophistication of the Buyers

58.    In determining the impact of buyer sophistication, the Court "must consider the general impression of the ordinary purchaser, buying under the normally prevalent condition of the market and giving the attention such purchasers usually give in buying that class of goods." *W.W.W. Pharm. Co., Inc., v. The Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993).

59.    It is "unnecessary to examine whether or not the consumers of apparel and men's neckwear are sophisticated" where, as here, the marks "are so similar, even a sophisticated consumer group would be confused." *In re Leslie Fay Cos.*, 216 B.R. 117, 128, 132 (Bankr. S.D.N.Y. 1997).

60.    However, "[a]ssuming, *arguendo*, the purchasers are sophisticated, many courts have found that purchasers of designer goods are often more vulnerable to confusion by similar marks because of their strong awareness of the status of the brand name. A consumer who is aware of the designer . . . could easily be misled by the neckwear label or watch packaging that boldly use the full distinct name . . . 'It is the "subliminal confusion" apparent in the . . . relationship . . . between the . . . entities and the products that can transcend the competence of even the most sophisticated consumer.'" *In re Leslie Fay Cos.*, 216 B.R. 117, 128, 132 (Bankr. S.D.N.Y. 1997) (citing *Grotian, Helfferich, Schulz, Th. Steinweg Nacht. v. Steinway & Songs*, 523 F.2d 1331, 1341 (2d Cir. 1975)).

61.    Further, in this case, "even though the goods are 'designer,' the consumer purchaser is not necessarily and especially sophisticated one and, thus, the likelihood of confusion is not mitigated by this factor." *In re Leslie Fay Cos.*, 216 B.R. 117, 128, 132 (Bankr.

S.D.N.Y. 1997). Rather, any confusion likely to be created by similar marks "is heightened by the defendant's reference to its [alleged] reputation as a creator and designer . . . . Any reference to a fashion reputation is, if anything, going to increase the confusion resulting from the use of very similar marks." *Emilio Pucci Societa A Responsibilita Limitata v. Pucci Corp.*, 1988 U.S. Dist. LEXIS 14097, at *11-12 (N.D. Ill. Dec. 13, 1988).

62.    Here, any consumer familiar with the GUCCI brand, whether the longstanding Gucci customer who views GUCCI as a 'lifestyle' brand, the first-time or occasional purchasers of GUCCI products, or even the consumer who does not now purchase GUCCI brand products because they are too expensive, is highly likely to be deceived by the packaging materials that Defendants have proposed to use. *In re Leslie Fay Cos.*, 216 B.R. 117, 128, 132 (Bankr. S.D.N.Y. 1997); *Grotian, Helfferich, Schulz, Th. Steinweg Nacht. v. Steinway & Songs*, 523 F.2d 1331, 1341 (2d Cir. 1975); *Emilio Pucci Societa A Responsibilita Limitata v. Pucci Corp.*, 1988 U.S. Dist. LEXIS 14097, at *11-12 (N.D. Ill. Dec. 13, 1988); *see also* Proposed Findings at ¶7-8.

### 3.    The Use of a Personal Name Constitutes Trademark Infringement and False Designation of Origin Where There is A Likelihood of Confusion

63.    As discussed more fully below, *see, supra* at ¶¶110-112, Defendants have filed claims for declaratory relief seeking a judicial declaration that they are entitled to use "mark[s] containing or comprised of [the names JENNIFER GUCCI and/or GEMMA GUCCI] together with 'designed by', 'created by' or 'styled by' (or the like)", arguing that such use of their names would not infringe upon the GUCCI marks, presumably because such use would be considered a non-trademark use. *See*, Defendants' Answers and Counterclaims.

64.    As set forth more fully above, a *prima facie* case for a claim for infringement of a registered trademark under Section 32 of the Lanham Act, as well as a claim for false designation

71

of origin under Section 43(a) of the Lanham Act, "is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

65.     As a matter of law, a claim of false designation of origin is a federal claim for unfair competition under the Lanham Act, extending beyond a claim for infringement of a registered mark under Section 32(1). For instance, Section 43(a) of the Lanham Act (protecting against a false designation of origin), protects against the use of "any word, term, name, symbol, or device, or any combination thereof" which "is likely to cause confusion, or to cause mistake, or to deceive as to the *affiliation, connection, or association* of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person", while Section 32 of the Lanham Act (protecting against trademark infringement), protects against the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." Thus, any words a party uses that is likely to deceive a consumer as to affiliation, connection or association, whether it uses such words as trademarks or not, can constitute a violation of Section 43(a). *See*, 15 U.S.C. § 1125(a)(1)(A) [emphasis added]; 15 U.S.C. § 1114(1)(a).

66.     Accordingly, for purposes of determining whether there is a false designation of origin, a party need only prove that Defendants' use of "any word, term, name, symbol, or device" is likely to cause a consumer to believe that the use in question is sponsored by, affiliated

with, connected to and/or approved by the trademark owner. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) (citations omitted) (noting that "a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement"); *see also* PUB. L. 100-667 § 132.

67.    Further, "even if consumers do not consciously assume that the defendant's product is somehow affiliated with plaintiff's product, there is the likelihood that consumers will be attracted to defendant's product on the strength of the goodwill and positive image established by plaintiff." *Stern's Miracle-Gro Prods., Inc. v. Shark Prods. Inc.*, 823 F. Supp. 1077, 1090 (S.D.N.Y. 1993); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 869 (2d Cir. 1986) (taking into account that the "two patterns are virtually identical when viewed from any appreciable distance"). This is especially true where a defendant, as here, is claiming to be a designer and is claiming to sell "designer" products. *Emilio Pucci Societa A Responsibilita Limitata v. Pucci Corp.*, 1988 U.S. Dist. LEXIS 14097, at *11-12 (N.D. Ill. Dec. 13, 1988) (noting that confusion "is heightened by the defendant's reference to its [alleged] reputation as a creator and designer of fashion . . . . Any reference to a fashion reputation is, if anything, going to increase the confusion resulting from the use of very similar marks"); *see also In re Leslie Fay Cos.*, 216 B.R. 117, 128, 132 (Bankr. S.D.N.Y. 1997); *Grotian, Helfferich, Schulz, Th. Steinweg Nacht. v. Steinway & Songs*, 523 F.2d 1331, 1341 (2d Cir. 1975).

68.    Furthermore, courts will not hesitate to absolutely ban an individual from using his personal name commercially in connection with a business, even other than as a mark, "where the enjoined party's only interest in the use of the surname is to free ride on the

reputation of a better known party." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96 CIV.

9721 (PKL) (THK), 98 CIV. 0123 (PKL) (THK), 2002 WL 2012618 (S.D.N.Y. Sept. 3, 2002);

*see also Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1445 (9th Cir. 1990) (noting that a court will

not "hesitate to forbid an individual from using his name in connection with a business when he

has deliberately attempted to confuse the public"); *McCarthy on Trademarks* § 13.3 (2007)

(noting that "persons with names that are the same as strong and famous personal name

trademarks have no 'right' to confuse the public by engaging in certain businesses under their

name"). This is particularly so where the infringer has not "established a personal reputation in

the particular business involved, based on skills, knowledge, and expertise acquired during years

in the industry." *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203, 207

(S.D.N.Y. 1987). The court's reasoning in *Bertolli USA, Inc.* is directly on point:

> While we do not doubt Filippo's sincere desire to develop a reputation as a maker of
> quality foods, he is, at present, a complete unknown. Any goodwill which defendants
> might build up in connection with their new business will be associated with whatever
> name Filippo ultimately may choose for their product. Hence, we fail to see any
> legitimate interest of defendants which would counsel in favor of allowing them to use
> Filippo's name even in the restricted fashion suggested.

662 F. Supp. at 207; *see also Lazzaroni USA Corp. v. Steiner Foods*, No. Civ. 05-4476 (JAG),

2006 WL 932345 (D.N.J. April 11, 2006) (absolutely enjoining the commercial use of the

"Lazzaroni" name); *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F.Supp. 384, 390 (N.D.Ala.

1983) (absolutely enjoining defendant "from using, in its corporate name, business name or in

any other manner, 'Arthur Young' alone or in conjunction with any word or words; and . . . .

enjoin[ing] [individual] from using any other designation confusingly similar to 'Arthur Young',

including any designation which includes either 'Arthur' or 'Young'"); *Schering Corp. v.

Schering Aktiengesellschaft*, 667 F.Supp. 175, 187 (D.N.J. 1987), *vacated on other grounds*, 709

F.Supp. 529 (D.N.J. 1988) (absolutely enjoining commercial use of "Schering" name in United

States); *John Zink Co. v. Zinkco*, 2 U.S.P.Q.2d 1606 (N.D.Okla. 1986) (absolutely enjoining

commercial use of "Zink" name); *John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302, 1312

(D.C.S.C. 1969) (absolutely enjoining commercial use of "Johnny Walker" name); *Hertz Equip.*

*Rental Corp., et al. v. Hertz Equip. Int'l, Inc.*, 281 F.Supp. 1019, 1020 (S.D.Fla.1967) (absolutely

enjoining commercial use of "Hertz" name); *Max Factor & Co. v. Factor*, 226 F.Supp. 120, 128-

29 (S.D.Cal. 1963) (absolutely enjoining commercial use of "Factor" name in connection with

the sale of ladies' hosiery as any such use would inevitably cause confusion); *Gamlen Chem. Co.*

*v. Gamlen*, 79 F.Supp. 622 (W.D.Pa. 1948) (absolutely enjoining commercial use of "Gamlen"

name); *Champion Spark Plug Co. v. Champion*, 23 F.Supp. 638 (D. Mich. 1938) (absolutely

enjoining commercial use of "Champion" name); *Great Atlantic & Pacific Tea Co. v. A. & P.*

*Radio Stores*, 20 F.Supp. 703 (D.C.Pa. 1937) (absolutely enjoining commercial use of initials

A&P in business); *Hat Corp. of Am. v. D L Davis Corp., Ltd.*, 4 F. Supp. 613 (D.Conn. 1933)

(absolutely enjoining commercial use of "Dobbs" name finding that a use of the name could not

be made "in the marketing of hats publicly offered for sale or in advertising hats for sale, without

deceiving and confusing the public to the plaintiff's damage"); *Mayo Clinic v. Mayo's Drug &*

*Cosmetic, Inc.*, 262 Minn. 101, 113 N.W.2d 852, 132 U.S.P.Q. 691 (1962) (absolutely enjoining

commercial use of "Mayo" name); *Hoyt Heater Co. v. Hoyt*, 68 Cal.App.2d 523, 157 P.2d 657,

65 U.S.P.Q. 294 (1945) (noting that where an individual "cannot use his own name without

inevitably representing his goods as those of another he may be enjoined from using his name in

connection with his business"); *Compania Ron Bacardi S.A. v. American Bacardi Rum Corp.*, 63

N.Y.S.2d 610 (N.Y. Sup. 1934) (absolutely enjoining defendant's commercial use of the

"Bacardi" name finding that "Bacardi is no longer merely the name of people in business; it is the trade-mark by which a certain product is known").

69.    Defendants claim that they have the right to commercially exploit their names under this Court's decision in *Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. 1988). Defendants' reliance on *Gucci Shops, Inc.*, however, is grossly misplaced. In that case, the Court *enjoined* Paolo Gucci, who, unlike Jennifer Gucci or Gemma Gucci here, had served as Gucci's chief designer for 25 years and had an established reputation as a world class designer, from using his name as a trademark and/or trade name in connection with apparel products that he himself had designed, and permitted him to only "identify himself as the designer of products so long as he does so in a manner which will not lead an appreciable number of consumers to believe that his products are 'GUCCI' products, or otherwise originate with, or are sponsored by or otherwise associated with, Gucci." *Gucci v. Gucci Shops, Inc.*, No. 83 CIV. 4453 (WCC), 1988 WL 75263, at *1 (S.D.N.Y July 13, 1988). However, as indicated in *Gucci Shops, Inc.*, the key to the Court's determination was that "Paolo Gucci spent many years cultivating his talent while serving as Gucci's chief designer" and that it accordingly *"cannot be argued that Paolo Gucci wishes to enter the field of design simply to capitalize on his name . . . ." Gucci Shops, Inc.*, 688 F.Supp. at 927 [emphasis added]. The Court further found that Paolo Gucci "ha[d] spent his entire mature life working in the relevant business", and possess[ed] extraordinary experience", so it would not be said "that the individual is entering the particular field 'for no apparent reason other than to use a conveniently confusing surname to his advantage.' *Id.* (citation omitted). The Court therefore held, under this particular set of unique facts, that Paolo

76

Gucci should be able to "exploit his own identity and reputation in a legitimate manner."' *Id.* (citation omitted).

70.     Here, as was the case in *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203, 207 (S.D.N.Y. 1987), there is no evidence in the record that Jennifer Gucci or Gemma Gucci have any reputation as designers in the United States, or that Defendants' conduct, over many years, has been anything more than an attempt to trade on Gucci America's incalculable goodwill and reputation. Rather, the overwhelming evidence makes clear that neither Jennifer Gucci or Gemma Gucci have any reputation as designers, as they themselves admit; that they were not the designers or creators of any of the products at issue in this case; and that their efforts, along with their licensing agent, and the moving force behind all of their infringing activities, Defendant Litwak, to license, market and sell a wide range of consumer products, using not only the infringing Jennifer Gucci and Gemma Gucci names, but numerous other marks, designs and indicia that are obvious copies of the other world famous Gucci trademarks, was blatantly done to confuse consumers and the trade into believing that Gucci America was the source of, affiliated with and/or the sponsor of the Jennifer Gucci and/or Gemma Gucci brand products. *See,* Cohen Witness Statement; Springer Witness Statement; Ergas Witness Statement; Gazlay Witness Statement; Macaluso Witness Statement; Sizemore Witness Statement; Jaffe Witness Statement; Gemma Gucci Dep. at pp. 175:25 - 176:3, 176:13-16; Jennifer Gucci Dep. at p. 214:15-17; Litwak Dep. at pp. 45:22 - 46:10.

71.     As there is simply no credible evidence that Jennifer Gucci or Gemma Gucci have any renown for design in the United States, or that Defendants' ill-conceived ventures were anything more than blatant attempts to exploit and trade-on the world famous Gucci Trademarks,

this case is nothing like *Gucci Shops, Inc.*, but, rather, is akin to the circumstances presented in

*Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203, 207 (S.D.N.Y. 1987).

72.      In fact, there is no case that cries out more for sweeping injunctive relief than this

case. Here, Defendants long history of attempting to exploit the JENNIFER GUCCI and

GEMMA GUCCI names on a wide variety of consumer products, including, but not limited to,

handbags, jewelry, watches, home products, spa and bath products, furniture, ice cream, gelato,

water, casinos and hotels, including handbags, jewelry, watches, home goods, bath products, is

conclusive evidence that Defendants will place their names on any consumer product or service

for which someone is willing to pay them a licensing fee or royalty.  The obvious purpose of this

calculated scheme is to create the very association that Gucci seeks to enjoin.  Accordingly, as

Gucci has demonstrated a strong likelihood that any use of the names JENNIFER GUCCI or

GEMMA GUCCI will have the exact effect that Defendants have intended, namely to lead an

appreciable number of consumers to believe that Gucci is the source of products bearing the

JENNIFER GUCCI and/or GEMMA GUCCI names, or otherwise originate with, or are

sponsored by or otherwise associated with, Gucci, any such use will constitute a violation of

Sections 32(1) and 43(a) of the Lanham Act.  *See, e.g., Bertolli USA, Inc. v. Filippo Bertolli Fine*

*Foods, Ltd.*, 662 F. Supp. 203 (S.D.N.Y. 1987) (affirming that likelihood of confusion is the test

of infringement in personal-name trademark cases and noting that where trademark infringement

is established, the trial court has discretion to tailor injunctive relief to fit the circumstances); *see*

*also* cases cited in ¶68.

4.    **Gucci's Claims For Trademark Counterfeiting Under Section 32(1) of the Lanham Act Should be Granted as Gucci has Demonstrated that Gucci has Valid Marks and that Defendants Have Used Marks that are Substantially Indistinguishable from Those Marks**

73.    As a matter of law where, as here, there is a claim for trademark counterfeiting, the Court need only determine whether Plaintiffs have a valid trademark and, if so, whether defendants are engaged in counterfeiting that mark, *i.e.*, whether the marks are substantially indistinguishable. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).

74.    Where claims of trademark counterfeiting are made, a Court need not undertake a likelihood of confusion analysis since counterfeits, by their very nature, cause confusion. *Gucci Am., Inc.*, 286 F. Supp. 2d at 287 (citing *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) (noting that "[w]here the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors"); *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979) (finding that "the very purpose of the individual marketing the cheaper [and virtually identical] items is to confuse the buying public into believing it is buying the true article"); *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (determining that "[w]here, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion").

75.    Here, the Gucci Trademarks are valid marks. Moreover, the evidence of record conclusively establishes that Defendants have engaged in acts of trademark counterfeiting by, *inter alia*, offering for sale products bearing words and designs that are substantially

indistinguishable from Gucci's registered trademarks. Thus, Defendants have counterfeited the

Gucci Trademarks by virtue of their use of the JENNIFER GUCCI and GEMMA GUCCI names;

by utilizing a repeating JG pattern design that is plainly copied from Gucci's federally-registered

and internationally recognized REPEATING GG Pattern Design; and by copying Gucci's

federally-registered and world famous GREEN-RED-GREEN Stripe Design.

**D.    The Defendants' Have Diluted Gucci's Famous Trademarks Under Federal Law**

76.    Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(C) provides, in pertinent part,

that:

> The owner of a famous mark shall be entitled, subject to the principles of equity ...
> to an injunction against another person's commercial use in commerce of a mark
> or trade name, if such use begins after the mark has become famous and causes
> dilution of the distinctive quality of the mark.

15 U.S.C. § 1125(C).

77.    Dilution is defined as "the lessening of the capacity of a famous mark to identify

and distinguish goods or services, regardless of the presence or absence of: (1) competition

between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake

or deception." *Moseley v. Victoria Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003).

78.    In order to establish a *prima facie* case for trademark dilution under Section 43(c)

of the Lanham Act, a plaintiff must meet the standard for trademark dilution established in this

Circuit: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must

be a commercial use in commerce; (4) it must begin after the senior mark has become famous;

and (5) it must cause dilution of the distinctive quality of the senior mark." *Savin Corp. v. Savin

Group*, 391 F.3d 439, 448-49 (2d Cir. 2004).

80

79.     Here, the first four factors are beyond dispute. The Gucci Trademarks are undeniably famous and distinctive, and Defendants began using infringing versions of the Gucci Trademarks in commerce long after Gucci first made them famous. *See,* generally Pl. Proposed Findings.

80.     With respect to the fifth factor, in light of the Trademark Dilution Revision Act of 2006, PUB. L. 109-312, 120 Stat. 1730 (codified in relevant part at 15 U.S.C. § 1125(c)(1)), Gucci need only establish a "likelihood of dilution" rather than "actual dilution." *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 81 U.S.P.Q.2d 1064 (E.D. Va. Nov. 3, 2006) (explaining that the 2006 amendment to 15 U.S.C. § 1125(c) replaces the "actual dilution" requirement with a "likely dilution" requirement).

81.     "The antidilution statutes rest on a judgment that the 'stimulant effect' of a distinctive and well-known mark is a 'powerful selling tool' that deserves legal protection." *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 217 (2d Cir. 1999).

82.     "Even when a unauthorized use of the mark does not cause consumer confusion, it can 'reduce [ ] the public's perception that the mark signifies something unique, singular or particular.'" *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 217 (2d Cir. 1999) (quoting H. Rep. 104-374, at 3 (1995), reprinted in 1995 U.S.C.C.A.N. 1029-30)). This is especially true in connection with "designer" merchandise, where image is everything, and anything that diminishes the image of the brand in the eyes of the consumer will cause him or her to lose confidence in the brand. Thus, as a matter of law, dilution exists where, as here, it is likely that "sophisticated, brand conscious consumers will lose interest in the [designer brand] name as they see the number of inferior products in the market bearing the [designer's brand] name grow."

*Cartier, Inc. v. Deziner Wholesale, L.L.C.*, No. Civ. 4947 (RLC), 2000 WL 347171, at *6 (S.D.N.Y. April 3, 2000); Proposed Findings at ¶¶7-8, 142-145.

83.    The factors to be considered when determining whether dilution of a trademark has occurred include: "(1) distinctiveness; (2) similarity of the marks; (3) proximity of the products and likelihood of bridging the gap; (4) interrelationship among the distinctiveness of the senior mark, the similarity of the junior mark, and the proximity of the products; (5) shared consumers and geographic limitations; (6) sophistication of consumers; (7) actual confusion; (8) adjectival or referential quality of the junior use; (9) harm to the junior user and delay by the senior user; and (10) effect of senior user's prior laxity in protecting the mark." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 217-22 (2d Cir. 1999); *WE Media, Inc. v. Gen. Elec. Co.*, 218 F. Supp. 2d 463, 468-69 (S.D.N.Y. 2002).

84.    The evaluation of the dilution factors generally follows the analysis of the likelihood of confusion factors. Where as here, there is a strong and distinctive senior mark with a significant degree of similarity between the senior and junior mark, and the use of the junior mark is in similar areas of commerce as the senior, there is a strong case for likelihood of dilution. *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 220 (2d Cir. 1999).

85.    Here, the mere fact that Gucci is allowing inferior products to be sold in connection with the GUCCI name would cause Gucci's more sophisticated customers to think less of Gucci and its brand image, to the point where they might even consider switching their allegiance to one of Gucci's competitors. Accordingly, Gucci should prevail on its claim for dilution under the Lanham Act. *See, e.g., Cartier, Inc. v. Deziner Wholesale, L.L.C.*, No. Civ.

4947 (RLC), 2000 WL 347171, at *6 (S.D.N.Y. April 3, 2000); *see also* Proposed Findings at ¶¶7-8, 142-145.

**E.    The Defendants' Have Diluted the World Famous Gucci Trademarks Under New York Gen. Bus. Law § Section 360-1**

86.    New York Gen. Bus. Law § 360-1 provides, in pertinent part, that:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or a trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

NY. Gen. Bus. Law § 360-1.

87.    To prevail on a claim under New York Gen. Bus. Law § 360-1, (1) "plaintiff's mark must possess a distinctive quality capable of dilution," and (2) "plaintiff must show a likelihood of dilution." *Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F.Supp. 1077, 1090 (S.D.N.Y. 1993) (citations omitted).

88.    New York law accords protection against dilution to marks that are inherently distinctive or distinctive as a result of acquired secondary meaning. *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 301 (S.D.N.Y. 2002).

89.    "Distinctiveness for dilution purposes often has been equated with the strength of a mark for infringement purposes." *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir.1989) (citations omitted). The court's finding, *supra*, of the strength and distinctiveness of the Gucci Trademarks supports a finding that the mark is capable of dilution, and the first element of Gucci's dilution claim is, therefore, satisfied. *Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374 (E.D.N.Y. 2008).

83

90.    With respect to the second element, dilution is "either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey." *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1031 (2d Cir.1989) (citation omitted); *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 301 (S.D.N.Y. 2002).

91.    Blurring occurs "where the defendant uses or modifies the plaintiffs' trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiffs' product." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (emphasis omitted).

92.    To determine the likelihood of blurring, in a case under the New York statute, the Second Circuit looks to six factors, including: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; (vi) the renown of the junior mark. *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994).

93.    Tarnishment occurs where a trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiffs' unrelated goods." *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 301 (S.D.N.Y. 2002).

94.    New York's anti-dilution statute applies to competitors as well as to non-competitors, and "explicitly does not require a plaintiff to demonstrate likelihood of consumer confusion." *Deere & Co. v. MDT Products, Inc.*, 41 F.3d 39, 42 (2d Cir. 1994); *Lord Jeff Knitting Co., v. Warnaco, Inc.*, 594 F. Supp. 579, 582 (S.D.N.Y. 1984).

95.    Here, the marks are substantially indistinguishable. Given that the type of products are similar and that the customer sophistication varies widely, the renown and distinctiveness of the Gucci Trademarks, there is little question that a likelihood of dilution is established here. Moreover, the mere fact that Gucci is allowing inferior products to be sold in connection with the GUCCI name would cause Gucci's more sophisticated customers to think less of Gucci and its brand image, to the point where they might even consider switching their allegiance to one of Gucci's competitors. Accordingly, Gucci should prevail on its claim for dilution under the Lanham Act. *See, e.g., Nike, Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp.2d 1352, 1372 (S.D. Ga. 2003) (dilution found "due to the identical or virtually identical character of the marks"). Accordingly, Defendants have violated New York's anti-dilution statute, New York Gen. Bus. Law § 360-1.

**F.    Defendants' Have Committed Unfair Competition and Common Law Trademark Infringement Under New York Common Law**

96.    "[T]he essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Stern's Miracle-Gro Products, Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1093 (S.D.N.Y. 1993); *Roy Export Co. v. CBS, Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982); *see also Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928) (L. Hand, J.) ("[A] reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful").

97.    "Under New York common law, 'an action for [trademark] infringement as well as an action for unfair competition both require a showing that the public is likely to confuse the

defendant's product or service with that of the plaintiff.'" *GTFM, Inc. v. Solid Clothing Inc.*, 215
F. Supp.2d 273, 300 (S.D.N.Y. 2002) (quoting *Allied Main Corp. v. Allied Mech. Trades, Inc.*,
42 N.Y.2d 538, 543 (1977)); *Best Cellars Inc. v. Grape Foods at Dupont, Inc.*, 90 F. Supp.2d
431,458 (S.D.N.Y. 2000).

98.    No showing of secondary meaning is required to establish unfair competition
under New York common law. *See, e.g., Forschner Group Inc. v. Arrow Trading Co.*, 124 F.3d
402, 408 (2d Cir. 1997) ("[A] showing of distinctiveness is not required to prove unfair
competition under New York State common law"); *Coach Leatherware Co. v. Ann Taylor, Inc.*,
933 F.2d 162, 169 (2d Cir. 1991); *Talk To Me Prods., Inc. v. Larami Corp.*, 992 F.2d 469, 470
(2d Cir. 1993); *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 649 (2d Cir. 1988).

99.    Because the *Polaroid* factors favor a finding of confusion, Gucci has also shown a
likelihood of success on their trademark infringement and unfair competition claims. *Tri-Star
Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 359 n.18 (S.D.N.Y. 1998) (because "the standards
for trademark infringement are essentially the same under the Lanham Act, New York law and
the common law . . . Defendants have similarly infringed upon Plaintiffs' marks under New York
law and the common law"); *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp.2d 273, 300-02
(S.D.N.Y. 2002) (likelihood of success on federal infringement claims supports likelihood of
success on New York infringement, unfair competition, dilution, and deceptive business
practices claims).

## G.    Defendants Have Violated New York Gen. Bus. Law § Section 349

100.    New York Gen. Bus. Law § 349 is a "broad, remedial statute to relax traditional
barriers to common law fraud." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 178
F. Supp. 2d 198, 231 (E.D.N.Y. 2001).

101.    Moreover, New York Gen. Bus. Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

102.    To prove a claim under New York Gen. Bus. Law § 349, a plaintiff must show: (1) that the act was consumer-oriented; (2) that the act was misleading in a material respect and (3) that the plaintiff was injured as a result of the deceptive act. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995); *Proctor & Gamble Co. v. Quality King Distribs., Inc.*, 974 F.Supp. 190, 201 (E.D.N.Y. 1997); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 611, 709 N.Y.S.2d 892, 895 (2000).

103.    New York Gen. Bus. Law § 349 was intended to be applied broadly and "contemplates actionable conduct that does not necessarily rise to the level of fraud." *Gaidon v. Guardian Life Ins.*, 94 N.Y.2d 330, 343, 725 N.E.2d 598, 603, 704 N.Y.S.2d 177, 182 (2000).

104.    Moreover, New York Gen. Bus. Law § 349 "on [its] face appl[ies] to virtually all economic activity." *Karlin v. IVFAm., Inc.*, 93 N.Y.2d 282, 290, 712 N.E.2d 662, 665, 690 N.Y.S.2d 495, 498 (1999).

105.    Proof of actual harm to the public, while relevant, is not necessary to prevail on a claim under New York Gen. Bus. Law § 349. Instead, a plaintiff only needs to demonstrate that the defendant's "acts or practices have a broader impact on the consumer at large" in that they may "potentially affect similarly situated consumers." *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26, 647 N.E.2d 741, 744-45, 623 N.Y.S. 2d 529, 532-33 (1995).

106.    The courts have liberally construed the "consumer-oriented" requirement under

New York Gen. Bus. Law § 349. *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y.

2004).

107.    Here, Defendants acts, as set forth *supra*, have violated New York Gen. Bus. Law

§ 349. *See*, generally Pl. Proposed Findings.

**H.    Defendants Are Jointly and Severally Liable and Defendants Jennifer Gucci and Gemma Gucci are Liable for the Acts of Litwak, Who They Appointed to Act as Their Licensing Agent**

108.    As a matter of law, Defendants Jennifer Gucci and Litwak and Gemma Gucci and

Litwak are jointly and severally liable for their willful trademark infringement.  The law is well

settled that "all persons and corporations who participate in, exercise control over, or benefit

from a trademark infringement are jointly and severally liable." *Lingo Corp v. Topix, Inc.*, 01

Civ. 2863 (RMB), 2003 WL 223454, *6 (S.D.N.Y. Jan. 31, 2003) (quoting *Schieffelein & Co. v.*

*Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1318 n.2 (S.D.N.Y. 1989); *see also Make Up For*

*Ever, S.A. v. SOHO Forever, LLC*, 198 F.R.D. 56, 60 (S.D.N.Y. 2000) ("[c]ourts have long held

that in . . . trademark . . . infringement cases, any member of the distribution chain can be sued as

an alleged joint tortfeasor") (citing *Wells v. Universal Pictures Co.*, 166 F.2d 690, 692 (2d Cir.

1948)).

109.    In addition, Defendants Jennifer Gucci and Gemma Gucci are liable for the acts of

Litwak, whom they appointed to act as their licensing agent. *Key Int'l Mfg., Inc. v.*

*Morse/Diesel, Inc.*, 142 A.D.2d 448, 453, 536 N.Y.S.2d 792, 795 (App.Div. 1988) (noting that "a

principal . . . is liable on contracts entered into on its behalf by an authorized agent . . ."); *see also*

Pl. Proposed Findings at ¶27-28.

**I.    Defendants' Counterclaims for Declaratory Relief Should be Denied**

110.    Defendants have filed claims for declaratory relief seeking a declaration that they are entitled to use the names JENNIFER GUCCI and GEMMA GUCCI. Specifically, Defendants' seek a judicial declaration that they are entitled to use "mark[s] containing or comprised of [the names JENNIFER GUCCI and/or GEMMA GUCCI] together with 'designed by', 'created by' or 'styled by' (or the like)", arguing that the use of their names do not infringe upon the GUCCI marks. *See*, Defendants' Answers and Counterclaims.

111.    There is simply no credible evidence that Jennifer Gucci or Gemma Gucci have any reputation whatsoever for design in the United States, or that Defendants' ill-conceived ventures were anything more than blatant attempts to exploit and trade-on the world famous Gucci Trademarks. *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203, 207 (S.D.N.Y. 1987).

112.    Accordingly, Defendants' claims for declaratory relief seeking a declaration that they are entitled to use the names JENNIFER GUCCI and GEMMA GUCCI should be denied as Defendants long history of attempting to exploit the JENNIFER GUCCI and GEMMA GUCCI names on a wide variety of consumer products, including, but not limited to, handbags, jewelry, watches, home products, spa and bath products, furniture, ice cream, gelato, water, casinos and hotels, including handbags, jewelry, watches, home goods, bath products, is conclusive evidence that Defendants will place their names on any consumer product or service for which someone is willing to pay them a licensing fee or royalty. The obvious purpose of this calculated scheme is to create the very association that Gucci is entitled to enjoin. Accordingly, as Gucci has demonstrated a strong likelihood that any use of the names JENNIFER GUCCI or GEMMA GUCCI will have the exact effect that Defendants have intended, namely to lead an appreciable

number of consumers to believe that Gucci is the source of products bearing the JENNIFER

GUCCI and/or GEMMA GUCCI names, or otherwise originate with, or are sponsored by or

otherwise associated with, Gucci, any such use will constitute a violation of Sections 32(1) and

43(a) of the Lanham Act. *See, e.g., Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F.

Supp. 203, 207 (S.D.N.Y. 1987); *see also* cases cited in ¶68.

### J.    Gucci's Claims are Justiciable and are Not Moot

113.    Defendants, in their answers to Gucci's amended complaint, claim that they have

not "advertised to the public, marketed or sold any product, or engaged in any other activity, in

violation of any State or Federal statute; nor [have they] engaged in any trademark infringement

or unfair competition in violation of the common law of the State of New York." *See,*

Defendants' Answers and Counterclaims.

114.    A claim may be dismissed as moot only if the offending conduct has ceased and

the Court concludes that "there is no reasonable expectation that it will resume." *See, e.g.,*

*McNeilab, Inc. v. Am. Home Prods. Corp.*, 501 F. Supp. 517, 523 (S.D.N.Y. 1980) (quoting *Allee*

*v. Medrano*, 416 U.S. 802, 810-11, 94 S. Ct. 2191, 2197-98, 40 L.Ed. 2d 566 (1974)); *Upjohn*

*Co. v. Am. Home Prods. Corp.*, 598 F. Supp. 550, 554-55 (S.D.N.Y. 1984).

115.    Accordingly, as a matter of law, even where a defendant has ceased its wrongful

activities, the matter is not moot, and the case is justiciable, where the defendant's intentions are

in doubt. *See, e.g., Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) (the fact that

defendant agreed prior to suit to stop using plaintiff's mark was a factor for the trial court to

consider, "but it did not prevent the court from considering [defendant's] previous infringing

behavior as a justification for an injunction"); *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*,

793 F.2d 1132 (9th Cir. 1986) (noting that "[i]f the defendants sincerely intend not to infringe,

90

the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its

trademark"); *Consumers Union of U.S., Inc. v. Theodore Hamm Brewing Co.*, 314 F. Supp. 697

(D. Conn. 1970) (holding that the voluntary cessation of activity is not a ground for denial of a

preliminary injunction).

116.    Thus, the Court should not dismiss a claim as moot based on the defendant's non-

binding assurance that it will refrain from engaging in further offensive conduct. Rather, the

Court should require the defendant to make an enforceable commitment not to engage in the

alleged spurious conduct before dismissing a claim. *See, e.g., McNeilab, Inc. v. Am. Home

Prods. Corp.*, 501 F. Supp. 517, 523 (S.D.N.Y. 1980); *Upjohn Co. v. Am. Home Prods. Corp.*,

598 F. Supp. 550, 555 (S.D.N.Y. 1984).

117.    Indeed, if a possibility exists that the act sought to be enjoined may be repeated,

the matter is not mooted and the case is justiciable. *Blisscraft of Hollywood v. United Plastics

Co.*, 294 F.2d 694 (2d Cir. 1961) (injunction granted to prevent future use of infringing mark

even though defendant had discontinued use before suit filed); *Field Enters. Educ. Corp. v. Cove

Indus., Inc.*, 297 F. Supp. 989 (E.D.N.Y. 1969) (jurisdiction retained even after defendant ceased

infringing activities); *Sherrell Perfumers, Inc. v. Revlon, Inc.*, 483 F. Supp. 188 (S.D.N.Y. 1980)

(injunction issued where defendant out of business for three years but stated intention to

recommence); *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986)

(holding that it was an abuse of discretion for a district court to refuse to grant a permanent

injunction on the ground that plaintiff presented no evidence that defendant planned to repeat its

acts of trademark infringement. The Ninth Circuit noted that "[i]f the defendants sincerely intend

not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark").

118.    Here, Defendants have a long history of attempting to exploit the JENNIFER GUCCI and GEMMA GUCCI names on a wide variety of consumer products. These efforts have resulted in the sale of GEMMA GUCCI wine and gelato products and the offer for sale of GEMMA GUCCI handbags as well as JENNIFER GUCCI home products, bedding and spa and bath products. Moreover, there is no evidence or claims that Defendants have decided not to utilize the JENNIFER GUCCI and/or GEMMA GUCCI names in the future. To the contrary, all Defendants have indicated that they intend to resume their activities, if permitted, once this case is resolved. For example, Defendants have filed claims for declaratory relief seeking a declaration that they are *entitled* to use the names JENNIFER GUCCI and GEMMA GUCCI. Accordingly, Gucci's claims are justiciable and are not moot. *See, e.g., Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393 (2d Cir. 2004); *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694 (2d Cir. 1961).

**K.    Gucci's Claims are Not Barred by the German Judgment**

119.    Defendants have argued that the resolution of a trademark dispute pending before the Regional Court — Chamber 6 Trade Court — in Hamburg, Germany, between the German company Fitsch & Bedayen GmbH and Guccio Gucci S.p.A of Italy, neither of which are parties to the instant action, in which the parties entered into an order resolving their dispute and allowing Fitsch & Bedayen to use the name GEMMA GUCCI in Germany in connection with the sale of jewelry products, so long as certain restrictions were met (the "German Order"), is conclusive evidence that they have the right to make commercial use of their names in the United States. For example, in her answer and counterclaims in this action, Defendant Gemma Gucci

claims that Gucci is "estopped from bringing this action against [Defendant Gemma Gucci] because of the Judgment entered in the court proceeding in Hamburg, Germany." *See*, Defendants' Answers and Counterclaims.

120.    As a matter of law, trademark rights are inherently territorial, and exist in each country only according to and to the extent of that particular country's statutory scheme. *See Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir.1985); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 714 (2d Cir. 2004) (finding that "[t]rademark standards do not traverse international borders"); *Osawa & Co. v. B & H Photo*, 589 F. Supp. 1163, 1171 (S.D.N.Y. 1984) (determining that "a trademark has a separate legal existence under each country's laws").

121.    Accordingly, when trademark rights within the United States are being litigated in an American court, the foreign proceedings concerning the respective trademark rights of the parties are "*irrelevant and inadmissible.*" *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 641-643 (2d Cir.), *cert. denied*, 352 U.S. 871 (1956) (emphasis added). In other words, a claimant's rights (or lack of rights) to a trademark in the United States cannot be established by the fact that the claimant agreed or was found by a foreign court to have (or not to have) rights over the same mark in a foreign country. *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985) (noting that "[o]ur concern must be the business and goodwill attached to United States trademarks, not French trademark rights under French law"); *Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*, No. 04 Civ. 3136 (HB), 2005 WL 13682 at *5 (S.D.N.Y. Jan. 3, 2005) (citations omitted).

122.    In *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1531

(11th Cir. 1985), a litigation concerning the parties rights in the REMY trademark in the U.S.,

the Defendant sought to introduce into evidence a settlement agreement that the parties entered

into in France concerning the scope of the Defendants' use of the REMY mark in France.  The

court, in finding that the district court had improperly admitted this evidence into the record,

determined that:

> We do hold that the district court erred as a matter of law to the extent it relied upon . . .
> the 1970 agreement concerning [Defendants] limiting the use of his mark in France to
> wines.  Like an earlier Battle of the Brandywine, this skirmish must be fought in this
> country, notwithstanding the presence of a French connection.  Our concern must be the
> 'business and goodwill attached to United States trademarks, not French trademarks
> rights under French law.'  We assume no knowledge of French trademark law and the
> legal and circumstantial reasons for [Plaintiff's] 1970 agreement . . . . *More importantly,*
> *we are not bound to recognize or rely upon foreign law and disagreements abroad settled*
> *under it.* . . . We therefore exclude the status of [Defendant's] mark in France under
> French law from this case, which concerns rights in a mark under our law.

*E. Remy Martin & Co.*, 756 F.2d at 1531.  *See also Fuji Photo Film Co. v. Shinohara Shoji*

*Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir.1985) (finding it "error to admit evidence of the

parties' foreign trademark practices"); *Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp.*, 868

F.Supp. 1414, 1418 (S.D.N.Y. 1994) (noting that "[t]he use of [the mark in question] in the

United States is governed solely by the trademark laws and decisions of this country"); *Federal*

*Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.*, 425 F.Supp.2d 458, 464 (S.D.N.Y.

2006) (finding that Russian court order were irrelevant to trademark issues before the U.S.

court); *Juicy ZCouture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ.7203 (DLC), 2006 WL 1012939, at

*34 (S.D.N.Y. Apr. 19, 2006) (noting that orders of "foreign courts are generally irrelevant and

inadmissible in trademark actions in the United States); *Jordache Enters., Inc. v. Levi Strauss &*

*Co.*, 841 F.Supp. 506, 516 n. 12 (S.D.N.Y. 1993) (noting that order of "foreign tribunals

concerning the trademarks rights of parties is irrelevant"); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F.Supp. 707, 719 (S.D.N.Y.1973) (noting that "the adjudications on the matter of the marks in question that may have been made in a foreign court have no application here" and, therefore, "we do not consider the reputed German court decisions of 1926 offered by plaintiff").

123.    In light of the clear precedent that a foreign court judgment/settlement is *irrelevant* to the question of whether Defendants have the right to use their names on or in connection with the sale of products in the U.S. or whether such conduct constitutes trademark infringement under U.S. law and, therefore, is *inadmissible* in a U.S. trademark infringement action, this Court should preclude Defendants from introducing the German Order into evidence at trial, and should also preclude the introduction of any testimony or other evidence relating or referring to the German Order. *See, e.g., E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985); *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 641-643 (2d Cir.), *cert. denied*, 352 U.S. 871 (1956).

124.    Moreover, this Court should find that Gucci's claims are not barred by the German Order, as none of the parties to the German Order are parties to the instant action. For example, the Plaintiff in the instant action is Gucci America, Inc., while the Gucci party in the German action was Guccio Gucci S.p.A of Italy. *See*, Exhibit A attached to Gucci's Motion *in limine* to Preclude Any Evidence Concerning a Foreign Court Judgment/Settlement for a copy of the German Order.

**L.** **Gucci is Entitled to a Permanent Injunction Enjoining Defendants From Making Any Commercial Use of the Names JENNIFER GUCCI and/or GEMMA GUCCI in Addition to Copying and Using Any Other Designs or Indicia That Infringe Upon Other Famous Gucci America Trademarks**

125.    Under the Lanham Act, a Court has "broad discretion to determine the appropriate remedy." *Linotype Co. v. Varityper, Inc.*, 1989 WL 94338, at *3 (S.D.N.Y. Aug. 4, 1989).

126.    To obtain a permanent injunction, Gucci "must demonstrate (1) actual success on the merits and (2) irreparable harm." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 289 (S.D.N.Y.2003) (citing *Wojnarowicz v. Am. Family Ass'n*, 745 F.Supp. 130, 148 n. 13 (S.D.N.Y.1990)).

127.    As a matter of law, in the Second Circuit, a finding of likelihood of confusion under the Lanham Act establishes both actual success on the merits and irreparable harm. *See Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir.1997).

128.    Here this Court should enjoin Defendants from (i) making any commercial use of the names JENNIFER GUCCI and/or GEMMA GUCCI; and (ii) copying and using any other designs or indicia that infringe upon other famous Gucci trademarks, including Gucci's famous GREEN-RED-GREEN Stripe Design and REPEATING GG Pattern Design marks. Any such use is likely to do exactly what Defendants intended, namely, lead an appreciable number of consumers to believe that Gucci is the source of products bearing the JENNIFER GUCCI and/or GEMMA GUCCI names, or believe that such products otherwise originate with, or are sponsored by or otherwise associated with, Gucci. *See, e.g.*, 15 U.S.C. § 1116(a); *Collins v. Aztar Corp.*, No. 99-7912, 2000 WL 302782, at *1 (2d Cir. Mar. 20, 2000) ("[P]ermanent injunctive relief will be granted only upon proof of the likelihood that purchasers of the product may be misled in

the future"); *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203, 207

(S.D.N.Y. 1987); *see also* cases cited in ¶68.

### M.    Gucci is Entitled to Recover Enhanced Damages and Statutory Damages From Defendants

129.    Consistent with its Complaint, Plaintiff is entitled to two types of monetary

damages: (1) an accounting of Defendants' profits trebled, and prejudgment interest pursuant to

15 U.S.C. § 1117(a); and (2) statutory damages pursuant to 15 U.S.C. § 1117(c).

130.    Gucci seeks an accounting of Defendants' profits and prejudgment interest

pursuant to 15 U.S.C. § 1117(a).  15 U.S.C. § 1117(a) provides:

> When a violation of any right of the registrant of a mark registered in the Patent
> and Trademark Office, a violation under section 1125(a) or (d) of this title, or a
> willful violation under section 1125(c) of this title, shall have been established in
> any civil action arising under this chapter, the plaintiff shall be entitled, subject to
> the provisions of sections 1111 and 1114 of this title, and subject to the principles
> of equity, to recover . . . defendant's profits. . . .  The court shall assess such
> profits and damages or cause the same to be assessed under its direction. . . .  In
> assessing damages the court may enter judgment, according to the circumstances
> of the case, for any sum above the amount found as actual damages, not exceeding
> three times such amount. If the court shall find that the amount of the recovery
> based on profits is either inadequate or excessive the court may in its discretion
> enter judgment for such sum as the court shall find to be just, according to the
> circumstances of the case. . . .

131.    Here, Defendants' profited from their willful acts of infringement. *See, e.g.*, Pl.

Proposed Findings at ¶¶36,40,68,75.

132.    In light of Defendants' willful conduct, (*see,* generally Pl. Proposed Findings),

and pursuant to the discretion afforded by 15 U.S.C. § 1117(a), the damages awarded to Gucci

should be trebled. 15 U.S.C. § 1117.

133.    Gucci also seeks statutory damages pursuant to 15 U.S.C. § 1117(c). 15 U.S.C. §

1117(c) provides:

In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits ... an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of — (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or(2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

134.    Gucci has submitted documented proof to the Court that Defendants have sold, offered to sell, and/or distributed at least two different types of counterfeit goods infringing on Gucci's registered trademarks, namely handbags (the GUCCI mark) and watches (the GUCCI and GREEN-RED-GREEN Stripe Design marks). Because Plaintiffs are entitled to statutory damages of up to $1,000,000 per type of good sold, this means that Plaintiffs are entitled to an award of statutory damages of up to $3 million. 15 U.S.C. § 1117(c)

135.    Moreover, because Defendants have been "shown to have acted willfully, [the] statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Rolex Watch U.S.A., Inc. v. Jones*, 99 Civ. 2359, 2002 U.S. Dist. LEXIS 6657, *15 (S.D.N.Y. Apr. 17, 2002) (Maas, M.J.), adopted without modification by Judge Cote on June 18, 2002.

136.    Defendants' "knowing[] and . . . reckless disregard" of Gucci's trademark rights also authorizes this Court to award punitive damages under New York State law for trademark and unfair competition claims. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 103-04 (2d Cir. 1989).

137.    Moreover, a punitive component is especially appropriate in this case, given Defendants' repeated disobedience of numerous orders of this Court. Notwithstanding the clear

and unambiguous terms of the August 20, 2007 Order for Expedited Discovery, Defendants have

failed to timely search for documents responsive to Gucci's document requests; make a complete

document production and/or preserve evidence from destruction. *See e.g., NBA v. Design Mgmt.*

*Consultants, Inc.*, 289 F. Supp. 2d 373, 377-38 (S.D.N.Y. 2003) (noting that "defendants'

continued failure to provide plaintiffs with documentation [required by a prior Court order]

inexcusably violates the Order" and therefore supports a finding of civil contempt); *Patsy's*

*Brand, Inc. v. I.O.B. Realty, Inc.*, 99 Civ. 10175 (JSM), 2002 U.S. Dist. LEXIS 16066 (S.D.N.Y.

Aug. 27, 2002) (awarding treble compensatory damages and a coercive fine for defendant's non-

compliance with the Court's preliminary injunction).

### N. Gucci is Entitled to Recover its Costs and Reasonable Attorneys' Fees

138.    Gucci seeks to recover its costs and attorneys' fees related to this action.

139.    Gucci is entitled to recover the "costs of the action" under 15 U.S.C. § 1117(a), as

well as appropriate prejudgment interest.

140.    To recover costs under the Lanham Act, a court need not find that the case is an

"exceptional" one under the statute. 15 U.S.C. § 1117(a). Rather, "[t]he statutory condition of

'subject to the principles of equity' grants to the trial court judge a wide field of equitable

discretion to award costs in a Lanham Act case." *McCarthy on Trademarks* § 30:107 (2007); *see*

*also Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1026 (S.D.N.Y.

1994).

141.    In addition, under 15 U.S.C. § 1117(b), Gucci is also entitled to an award of its

reasonable attorneys' fees incurred in bringing this action. *See, e.g., Centaur Commc'ns, Ltd. v.*

*A/S/M Commc'ns, Inc.*, 652 F. Supp. 1105, 1114-15 (S.D.N.Y. 1987) (noting that "under both

federal and state law the awarding of attorney's fees as additional costs against defendant and for

99

the plaintiff is appropriate based on defendant's bad faith, deliberate and willful infringement of plaintiff's mark").

142.    The decision to award reasonable attorneys' fees "fall[s] well within the district court's discretion." *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989); *Project Strategies Corp., v. Nat'l Comm. Corp.*, 948 F. Supp. 218, 223-24 (E.D.N.Y. 1996).

143.    In order to be entitled to recover its reasonable attorneys' fees, the law does not require anything more than Gucci to demonstrate that Defendants acted with a fraudulent intent or in bad faith. *See, e.g., Coach, Inc. v. We Care Trading Co., Inc.*, 67 Fed.Appx. 626 (2d Cir. 2002) ("Coach's success in obtaining an injunction and the district court's well supported findings of bad faith on We Care's part . . . sufficiently support a finding of exceptional circumstances and an award of attorney's fees"); *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1026 (S.D.N.Y. 1994) (noting that "[a] finding of deliberate, willful or bad faith violations of the Lanham Act is sufficient to warrant the finding of an exceptional case").

144.    Moreover, a showing of actual damages is not required for the court to award a plaintiff its reasonable attorneys' fees. *Fruit of the Loom, Inc. v. Am. Mktg. Enters.*, 1999 U.S. Dist. LEXIS 11060, at **6-7 (S.D.N.Y. July 22, 1999) (determining that "the failure to prove actual damages does not preclude an award of attorney's fees"); *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1229 (2d Cir. 1987) (a showing of lost sales is not required to obtain attorneys' fees); *see also Coach, Inc. v. We Care Trading Co.*, 2001 U.S. Dist. LEXIS 9879, at *49-54 (S.D.N.Y. July 19, 2001); *aff'd*, 67 Fed. Appx. 626, 630 (2d Cir. 2002).

145.  For instance, in *Centaur Commc'ns, Ltd.*, the plaintiff waived damages and moved for a permanent injunction and attorney's fees, both of which were granted. On appeal, the Second Circuit affirmed the award of attorney's fees, which was based on a finding of willful and deliberate infringement and specifically rejected defendant's claim that attorney's fees should not be awarded because plaintiff failed to show any lost sales. *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1229 (2d Cir. 1987).

146.  Finally, under New York General Business Law § 349, the Court has vast discretion to award reasonable attorneys' fees. N.Y. Gen. Bus. Law § 349(h); *see also Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp. 2d 127, 131-32 (E.D.N.Y. 1998); *Vitabiotics, Ltd. v. Krupa*, 606 F. Supp. 779, 786 (E.D.N.Y. 1984).

147.  Here, in light of the evidence of record, Gucci is entitled to recover its costs and reasonable attorneys' fees for defendants' willful infringement. For instance, Defendants have attempted on multiple occasions to register the names JENNIFER GUCCI and/or GEMMA GUCCI as trademarks with the United States Patent and Trademark Office and have been rejected each time due to the Trademark Office's determination that the applied-for marks were likely to be confused with the GUCCI mark. Moreover, Defendants Jennifer Gucci and Litwak have counterfeited two of the most critically important Gucci trademarks — the green-red-green stripe design and the repeating GG design. The adoption of these marks in conjunction with the commercial use of the Gucci name demonstrates beyond all doubt that Defendants Jennifer Gucci and Litwak were attempting to create immediate brand recognition by trading on the world wide fame and recognition of the Gucci Trademarks. *See*, generally Pl. Proposed Findings.

Dated:  New York, New York
        June 17, 2008

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____

Louis S. Ederer
John Maltbie
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Gucci America, Inc.*