Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

GUCCI AMERICA, INC.,

                Plaintiff,

        - against -

JENNIFER GUCCI, JENCO DESIGNS, LLC, JENNICOR, LLC, JENNY GUCCI COFFEE AND GELATO COMPANY, INC., VERATEX, INC., COLLEZIONE DI CASA, INC., E.L. ERMAN - DEAD SEA COSMETICS CORP., ELE BRANDS ENTERPRISE, INC., GBN WATCH COLLECTION, INC., GBN GLOBAL BUSINESS NETWORK, EDWARD LITWAK d/b/a ED LITWAK & ASSOCIATES, GEMMA GUCCI, GEMMA GUCCI COFFEE AND GELATO COMPANY, INC., ABC CORPORATIONS 1-10, and JOHN DOES 1-10,

                Defendants.

------------------------------------------------------------ x

Civil Action No. 07 Civ. 6820 (RMB)

**PLAINTIFF GUCCI AMERICA, INC.'S TRIAL BRIEF**

## PRELIMINARY STATEMENT

Plaintiff, Gucci America, Inc. ("Gucci America"), is the owner of the famous GUCCI trademark — one of the world's most recognized trademarks — in the United States for fine leather goods, clothing, accessories, home products, fragrances, perfumes, jewelry and watches (U.S. Trademark Registration Numbers 876,292, 959,338, 972,078, 1,093,769, 1,140,598, 1,168,477, 1,169,019, 1,168,922, 1,200,991, 1,202,802, 1,321,864 and 1,340,599). Gucci America also owns and uses other well-known marks, designs and indicia, including Gucci's world famous GREEN-RED-GREEN Stripe Design (U.S. Trademark Registration Numbers 1,122,780, 1,123,224 and 1,483,526) and REPEATING GG Pattern Design marks (U.S. Trademark Registration Numbers 2,680,237, 3,072,547 and 3,072,549) (the GUCCI, GREEN-RED-GREEN Stripe Design and REPEATING GG Pattern Design marks are collectively referred to as the "Gucci Trademarks").

Gucci America submits this Pretrial Memorandum of Law to preview for the Court the critical issue to be addressed at trial, namely, whether Defendants Jennifer Gucci and Gemma Gucci, wife and daughter of a deceased Gucci family member, Paolo Gucci, who have no reputation as designers in the United States, along with their licensing agent, Paolo Gucci's former licensing agent, and the moving force behind all of Defendants' infringing activities, Defendant Edward Litwak d/b/a Ed Litwak and Associates ("Litwak"), may be enjoined from free riding on the incalculable goodwill symbolized by the GUCCI trademark, by commercially exploiting their names in business; and, to counter the diversionary assertions that have been made by Defendants during the course of this litigation.

Defendants have repeatedly argued that they have the right to commercially exploit the JENNIFER GUCCI and GEMMA GUCCI names under this Court's decision in *Gucci v. Gucci*

1

*Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. 1988). In that case, Paolo Gucci, Jennifer Gucci's ex-husband and Gemma Gucci's father, was allowed to use his name in a limited way, not as a trademark or trade name, in connection with the promotion and sale of products he designed, to identify himself as the designer of such goods. However, notably, the Court in *Gucci Shops, Inc.*, acknowledged that "Paolo Gucci spent many years cultivating his talent while serving as Gucci's chief designer" and that it accordingly "*cannot be argued that Paolo Gucci wishes to enter the field of design simply to capitalize on his name . . . .*" *Gucci Shops, Inc.*, 688 F.Supp. at 927 [emphasis added].

The issue, then, in a case like this, as the Court in *Gucci Shops, Inc.* aptly recognized, is whether the individual in question, who just happens to have a surname that is identical to a famous trademark, has longstanding expertise and an established reputation in a particular field, and is simply trying to ply his or her trade and take advantage of that reputation, or whether such individual has no reputation or expertise, and seeks to use his or her name commercially, even other than as a trademark, in connection with the sale of goods, to inevitably take advantage of the trademark owner's goodwill. In the latter case, an injunction barring such use is appropriate where, as is the case here, the individual has *not* acquired, and does *not* have his own reputation as a designer of goods. Thus, for example, in *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203, 206-07 (S.D.N.Y. 1987), this Court enjoined the great grandson of the individual who started the famous BERTOLLI olive oil brand from using his name in connection with the promotion and sale of food products as the great grandson had no established reputation in the olive oil business, and had no other reason to use the Bertolli name other than to confuse consumers into thinking he was somehow associated with the famous BERTOLLI brand.

Here, as in *Bertolli USA, Inc.*, there is simply no evidence — indeed, the contrary has been conceded in deposition testimony — that Defendants Jennifer Gucci or Gemma Gucci have any reputation in the United States as designers of consumer products. Moreover, the clear evidence of record establishes that Defendants, on numerous occasions, have attempted to place the JENNIFER GUCCI and/or GEMMA GUCCI names on any products that a licensee would pay them a royalty for, all in an attempt to free ride on the world famous GUCCI trademark. *See*, Cohen Witness Statement; Springer Witness Statement; Ergas Witness Statement; Gazlay Witness Statement; Macaluso Witness Statement; Sizemore Witness Statement; Jaffe Witness Statement; Gemma Gucci Dep. at pp. 175:25 - 176:3, 176:13-16; Jennifer Gucci Dep. at p. 214:15-17; Litwak Dep. at pp. 45:22 - 46:10. As such, Defendants should not be able to take advantage of the Court's decision in *Gucci Shops, Inc.*, and should be enjoined from making any commercial use of the JENNIFER GUCCI and GEMMA GUCCI names, as any such use is likely to cause, and would be for the sole purpose of causing, confusion in the marketplace.

## STATEMENT OF FACTS

The relevant facts are set forth in detail in Gucci America's Proposed Findings of Fact and Conclusions of Law, the deposition designations from Jennifer Gucci, Gemma Gucci and Litwak's depositions, in the witness statements of Jonathan Moss, Esq., Terilyn Novak, Avi Cohen, Shane Springer, Yakov Ergas, Mandy Talbert, John Macaluso, Randy Sizemore, Richard Gazlay and Brian Jaffe, as well as in Gucci America's trial exhibits referenced therein.

## ARGUMENT

Gucci America brought this action for, *inter alia*, trademark infringement, false designation of origin, trademark dilution and unfair competition against, among others, Jennifer Gucci, Gemma Gucci and Litwak, in connection with their plans to license and launch a number

of different product lines under the JENNIFER GUCCI and GEMMA GUCCI names. Further, in addition to infringing Gucci America's famous GUCCI mark, Defendants Litwak and Jennifer Gucci have made use of various designs and indicia that blatantly infringe upon Gucci's world famous GREEN-RED-GREEN Stripe Design and REPEATING GG Pattern Design marks. *See, e.g.*, Pl. Tr. Exs. 22, 32 and 45, demonstrating Defendants clear intent to cause consumers to be confused into believing that products associated with their names originate with, or are sponsored by or otherwise associated with, Gucci America. Meanwhile, Defendants have filed claims for declaratory relief seeking a judicial declaration that they are entitled to use "mark[s] containing or comprised of [the names JENNIFER GUCCI and/or GEMMA GUCCI] together with 'designed by', 'created by' or 'styled by' (or the like)", arguing that such use of their names would not infringe upon the GUCCI marks, presumably because such use would be considered a non-trademark use. *See*, Defendants' Answers and Counterclaims.

A *prima facie* case for a claim for infringement of a registered trademark under Section 32 of the Lanham Act, as well as a claim for false designation of origin under Section 43(a) of the Lanham Act, "is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). Therefore, a claim of false designation of origin extends beyond a claim for infringement of a registered mark under Section 32(1). For instance, Section 43(a) of the Lanham Act (protecting against a false designation of origin), protects against the use of "any word, term, name, symbol, or device, or any combination thereof" which "is likely to cause confusion, or to cause mistake, or to deceive as to the *affiliation, connection, or association* of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another

4

person", while Section 32 of the Lanham Act (protecting against trademark infringement), protects against the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." *See*, 15 U.S.C. § 1125(a)(1)(A) [emphasis added]; 15 U.S.C. § 1114(1)(a). Thus, any words a party uses that are likely to deceive a consumer as to affiliation, connection or association, whether it uses such words as trademarks or not, can constitute a violation of Section 43(a).

Accordingly, for purposes of determining whether there is a false designation of origin, a party need only prove that Defendants' use of "any word, term, name, symbol, or device" is likely to cause a consumer to believe that the use in question is sponsored by, affiliated with, connected to and/or approved by the trademark owner. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) (citations omitted) (noting that "a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement"); *see also* PUB. L. 100-667 § 132.

Further, "even if consumers do not consciously assume that the defendant's product is somehow affiliated with plaintiff's product, there is the likelihood that consumers will be attracted to defendant's product on the strength of the goodwill and positive image established by plaintiff." *Stern's Miracle-Gro Prods., Inc. v. Shark Prods. Inc.*, 823 F. Supp. 1077, 1090 (S.D.N.Y. 1993); *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 869 (taking into account that the "two patterns are virtually identical when viewed from any appreciable distance"). This is especially true where a defendant, as here, is claiming to be a designer and is claiming to sell

5

"designer" products. *Emilio Pucci Societa A Responsibilita Limitata v. Pucci Corp.*, 1988 U.S. Dist. LEXIS 14097, at *11-12 (N.D. Ill. Dec. 13, 1988) (noting that confusion "is heightened by the defendant's reference to its [alleged] reputation as a creator and designer of fashion . . . . Any reference to a fashion reputation is, if anything, going to increase the confusion resulting from the use of very similar marks"); *see also In re Leslie Fay Cos.*, 216 B.R. 117, 128, 132 (Bankr. S.D.N.Y. 1997); *Grotian, Helfferich, Schulz, Th. Steinweg Nacht. v. Steinway & Songs*, 523 F.2d 1331, 1341 (2d Cir. 1975).

Thus, courts will not hesitate to absolutely ban an individual from using his personal name commercially in connection with a business "where the enjoined party's only interest in the use of the surname is to free ride on the reputation of a better known party." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96 CIV. 9721 (PKL) (THK), 98 CIV. 0123 (PKL) (THK), 2002 WL 2012618 (S.D.N.Y. Sept. 3, 2002); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1445 (9th Cir. 1990) (noting that a court will not "hesitate to forbid an individual from using his name in connection with a business when he has deliberately attempted to confuse the public"); *McCarthy on Trademarks* § 13.3 (2007) (noting that "persons with names that are the same as strong and famous personal name trademarks have no 'right' to confuse the public by engaging in certain businesses under their name"). This is particularly so where, as noted above, the infringer has not "established a personal reputation in the particular business involved, based on skills, knowledge, and expertise acquired during years in the industry." *Bertolli USA, Inc.*, 662 F.Supp. at 207. The court's reasoning in *Bertolli USA, Inc.* is directly on point:

> While we do not doubt Filippo's sincere desire to develop a reputation as a maker of quality foods, he is, at present, a complete unknown. Any goodwill which defendants might build up in connection with their new business will be associated with whatever name Filippo ultimately may choose for their product. Hence, we fail to see any

6

legitimate interest of defendants which would counsel in favor of allowing them to use Filippo's name even in the restricted fashion suggested.

662 F. Supp. at 207; *see also Lazzaroni USA Corp. v. Steiner Foods*, No. Civ. 05-4476 (JAG), 2006 WL 932345 (D.N.J. April 11, 2006) (absolutely enjoining the commercial use of the "Lazzaroni" name); *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F.Supp. 384, 390 (N.D.Ala. 1983) (absolutely enjoining defendant "from using, in its corporate name, business name or in any other manner, 'Arthur Young' alone or in conjunction with any word or words; and . . . . enjoin[ing] [individual] from using any other designation confusingly similar to 'Arthur Young', including any designation which includes either 'Arthur' or 'Young'").[1]

As indicated above, Defendants claim that they have the right to commercially exploit their names under this Court's decision in *Gucci Shops, Inc.* Defendants' reliance on *Gucci Shops, Inc.*, however, is grossly misplaced. In that case, the Court *enjoined* Paolo Gucci, who, unlike Jennifer Gucci or Gemma Gucci here, had served as Gucci's chief designer for 25 years

---

[1] *See also, Schering Corp. v. Schering Aktiengesellschaft*, 667 F.Supp. 175, 187 (D.N.J. 1987), *vacated on other grounds*, 709 F.Supp. 529 (D.N.J. 1988) (absolutely enjoining commercial use of "Schering" name in United States); *John Zink Co. v. Zinkco*, 2 U.S.P.Q.2d 1606 (N.D.Okla. 1986) (absolutely enjoining commercial use of "Zink" name); *John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302, 1312 (D.C.S.C. 1969) (absolutely enjoining commercial use of "Johnny Walker" name); *Hertz Equip. Rental Corp., et al. v. Hertz Equip. Int'l, Inc.*, 281 F.Supp. 1019, 1020 (S.D.Fla.1967) (absolutely enjoining commercial use of "Hertz" name); *Max Factor & Co. v. Factor*, 226 F.Supp. 120, 128-29 (S.D.Cal. 1963) (absolutely enjoining commercial use of "Factor" name in connection with the sale of ladies' hosiery as any such use would inevitably cause confusion); *Gamlen Chem. Co. v. Gamlen*, 79 F.Supp. 622 (W.D.Pa. 1948) (absolutely enjoining commercial use of "Gamlen" name); *Champion Spark Plug Co. v. Champion*, 23 F.Supp. 638 (D. Mich. 1938) (absolutely enjoining commercial use of "Champion" name); *Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores*, 20 F.Supp. 703 (D.C.Pa. 1937) (absolutely enjoining commercial use of initials A&P in business); *Hat Corp. of Am. v. D L Davis Corp., Ltd.*, 4 F. Supp. 613 (D.Conn. 1933) (absolutely enjoining commercial use of "Dobbs" name finding that a use of the name could not be made "in the marketing of hats publicly offered for sale or in advertising hats for sale, without deceiving and confusing the public to the plaintiff's damage"); *Mayo Clinic v. Mayo's Drug & Cosmetic, Inc.*, 262 Minn. 101, 113 N.W.2d 852, 132 U.S.P.Q. 691 (1962) (absolutely enjoining commercial use of "Mayo" name); *Hoyt Heater Co. v. Hoyt*, 68 Cal.App.2d 523, 157 P.2d 657, 65 U.S.P.Q. 294 (1945) (noting that where an individual "cannot use his own name without inevitably representing his goods as those of another he may be enjoined from using his name in connection with his business"); *Compania Ron Bacardi S.A. v. American Bacardi Rum Corp.*, 63 N.Y.S.2d 610 (N.Y. Sup. 1934) (absolutely enjoining defendant's commercial use of the "Bacardi" name finding that "Bacardi is no longer merely the name of people in business; it is the trade-mark by which a certain product is known").

7

and had an established reputation as a world class designer, from using his name as a trademark and/or trade name in connection with apparel products that he himself had designed, and permitted him to only "identify himself as the designer of products so long as he does so in a manner which will not lead an appreciable number of consumers to believe that his products are 'GUCCI' products, or otherwise originate with, or are sponsored by or otherwise associated with, Gucci." *Gucci v. Gucci Shops, Inc.*, No. 83 CIV. 4453 (WCC), 1988 WL 75263, at *1 (S.D.N.Y July 13, 1988). However, as indicated in *Gucci Shops, Inc.*, the key to the Court's determination was that "Paolo Gucci spent many years cultivating his talent while serving as Gucci's chief designer" and that it accordingly "*cannot be argued that Paolo Gucci wishes to enter the field of design simply to capitalize on his name . . . .*" *Gucci Shops, Inc.*, 688 F.Supp. at 927 [emphasis added]. The Court further found that Paolo Gucci "ha[d] spent his entire mature life working in the relevant business", and possess[ed] extraordinary experience", so it would not be said "that the individual is entering the particular field 'for no apparent reason other than to use a conveniently confusing surname to his advantage.' *Id.* (citation omitted). The Court therefore held, under this particular set of unique facts, that Paolo Gucci should be able to "exploit his own identity and reputation in a legitimate manner.'" *Id.* (citation omitted).

Here, as was the case in *Bertolli USA, Inc.*, 662 F.Supp. at 207, there is no evidence in the record that Jennifer Gucci or Gemma Gucci have any reputation as designers in the United States, or that Defendants' conduct, over many years, has been anything more than an attempt to trade on Gucci America's incalculable goodwill and reputation. Rather, the overwhelming evidence makes clear that neither Jennifer Gucci or Gemma Gucci have any reputation as designers, as they themselves admit; that they were not the designers or creators of any of the products at issue in this case; and that their efforts, along with their licensing agent, and the

moving force behind all of their infringing activities, Defendant Litwak, to license, market and sell a wide range of consumer products, using not only the infringing Jennifer Gucci and Gemma Gucci names, but numerous other marks, designs and indicia that are obvious copies of the other world famous Gucci trademarks, was blatantly done to confuse consumers and the trade into believing that Gucci America was the source of, affiliated with and/or the sponsor of the Jennifer Gucci and/or Gemma Gucci brand products. *See*, Cohen Witness Statement; Springer Witness Statement; Ergas Witness Statement; Gazlay Witness Statement; Macaluso Witness Statement; Sizemore Witness Statement; Jaffe Witness Statement; Gemma Gucci Dep. at pp. 175:25 - 176:3, 176:13-16; Jennifer Gucci Dep. at p. 214:15-17; Litwak Dep. at pp. 45:22 - 46:10.

As there is simply no credible evidence that Jennifer Gucci or Gemma Gucci have any renown for design in the United States, or that Defendants' ill-conceived ventures were anything more than blatant attempts to exploit and trade-on the world famous Gucci Trademarks, this case is nothing like *Gucci Shops, Inc.*, but, rather, is akin to the Court's decision in *Bertolli USA, Inc.*, 662 F.Supp. 203 at 206-07, and the numerous other cases enjoining the commercial use of a surname referenced above. Accordingly, this Court should enjoin Defendants from (i) making any commercial use of the names JENNIFER GUCCI and/or GEMMA GUCCI; and (ii) copying and using any other designs or indicia that infringe upon other famous Gucci trademarks, including Gucci's famous GREEN-RED-GREEN Stripe Design and REPEATING GG Pattern Design marks. Any such use is likely to do exactly what Defendants intended, namely, lead an appreciable number of consumers to believe that Gucci is the source of products bearing the JENNIFER GUCCI and/or GEMMA GUCCI names, or believe that such products otherwise originate with, or are sponsored by or otherwise associated with, Gucci. *See, e.g.*, 15 U.S.C. § 1116(a); *Collins v. Aztar Corp.*, No. 99-7912, 2000 WL 302782, at *1 (2d Cir. Mar. 20, 2000)

("[P]ermanent injunctive relief will be granted only upon proof of the likelihood that purchasers of the product may be misled in the future"); *Bertolli USA, Inc.*, 662 F.Supp. 203 (affirming that likelihood of confusion is the test of infringement in personal-name trademark cases and noting that where trademark infringement is established, the trial court has discretion to tailor injunctive relief to fit the circumstances); *see also* cases cited, *supra*, in fn. 1.

## CONCLUSION

For the foregoing reasons, this Court should enter judgment for Plaintiff.

Dated:   New York, New York
         June 17, 2008

Respectfully submitted,
ARNOLD & PORTER LLP

By: _____
Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
399 Park Avenue
New York, New York 10022
(212) 715-1000
*Attorneys for Plaintiff Gucci America, Inc.*