UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
:
GUCCI AMERICA, INC., :
:
Plaintiff, :
: Civil Action No.
- against - : 07 cv 6820 (RMB) (JCF)
:
JENNIFER GUCCI, JENCO DESIGNS, LLC, :
JENNICOR, LLC, JENNY GUCCI COFFEE AND :
GELATO COMPANY, INC., VERATEX, INC., :
COLLEZIONE DI CASA, INC., E.L. ERMAN - :
DEAD SEA COSMETICS CORP., ELE BRANDS :
ENTERPRISE, INC., GBN WATCH :
COLLECTION, INC., GBN GLOBAL BUSINESS :
NETWORK, EDWARD LITWAK d/b/a ED :
LITWAK & ASSOCIATES, GEMMA GUCCI, :
GEMMA GUCCI COFFEE AND GELATO :
COMPANY, INC., ABC CORPORATIONS 1-10, :
and JOHN DOES 1-10, :
:
Defendants. :
:
------------------------------------------------------------ x

# WITNESS STATEMENT OF AVI COHEN
## SUBMITTED BY PLAINTIFF GUCCI AMERICA, INC.

Avi Cohen declares as follows under penalty of perjury:

1. I am president and an owner of defendant Veratex, Inc. ("Veratex") and Collezione di Casa, Inc. ("Collezione").

2. Veratex is a company engaged in the business of designing, manufacturing and selling bedding and bathroom accessories, such as quilts, blankets, sheets, towels and shower curtains. Veratex regularly sells to such well-known retailers as Bed Bath and Beyond, Linens and Things, and Dillards primarily under our own name VERATEX.

3. Collezione was formed to start a line of products that would use the name JENNIFER GUCCI involving Jennifer Gucci and Edward Litwak. It was hoped that Collezione would ultimately engage in the design, manufacture and sales of bedding and bath products under the JENNIFER GUCCI name.

4. Veratex's involvement in the circumstances giving rise to this action began in approximately January 2007. At that time, I was introduced to Mr. Litwak, who told me that he was the licensing agent for Jennifer Gucci, the widow of Paolo Gucci, a member of the Gucci family that had owned the famous GUCCI brand. Litwak was looking to license the rights to use Jennifer Gucci's name in connection with a range of products and informed me that he and Jennifer Gucci owned and controlled those rights. Litwak also told me that the timing for a licensing relationship was particularly good, since a motion picture or television series about Jennifer Gucci's life in the Gucci family was in production and was anticipated to be released in the near future. Litwak also informed me that a book about Ms. Gucci's life would be published in the near future, and that he expected a tremendous amount of publicity surrounding the release of the movie, the publishing of the book, and the expected launch of other products at that time.

5. I was, of course, well aware at the time of the well-known GUCCI brand name, and I asked Litwak whether we could expect any resistance from Gucci. Litwak informed me

1

that there was a court decision from the 1980's involving Paolo Gucci, Jennifer Gucci's husband, which allowed Paolo Gucci to use his name on products, so long as he used some other brand name in conjunction with his name, and that this decision provided a "roadmap" for the use of the JENNIFER GUCCI name and that if we followed the decision, "we would not have any problems with the Gucci company."

6. In January 2007, Litwak also provided me with materials purporting to show that Jennifer Gucci had sold products using her name before. At the time, I understood from my discussions with Litwak that the products shown in these materials had been commercially sold. *See*, Pl. Tr. Ex. 20.

7. Veratex had been looking for the opportunity to expand its business. The program with Ms. Gucci sounded like an excellent opportunity for our company. The JENNIFER GUCCI name and the planned publicity surrounding her other projects would give us instant brand name recognition and credibility. I therefore decided to go ahead with a licensing program with Litwak and Ms. Gucci to develop a JENNIFER GUCCI line of products.

8. On or about February 2, 2007 I met with Litwak at Veratex's offices in Panorama City, California. At this meeting, Litwak provided design materials and instructions to Shane Springer, Veratex's graphic designer, to be used in the development of packaging designs for the JENNIFER GUCCI bedding and bath line. *See*, Pl. Tr. Ex. 203.

9. Included in the materials Litwak provided to Mr. Springer were documents containing the phrase "Collezione Di Jennifer Gucci", as well as a number of different designs, including a green-red-green stripe design; several designs featuring the initials "JG"; a repeating diamond pattern design that featured interlocking inverted "GG's"; and a crest design. *See*, Pl. Tr. Ex. 203.

10. A few weeks later, still in February 2007, I and other Veratex team members had a meeting with Litwak and Jennifer Gucci at the Veratex showroom in New York City. The purpose of the meeting was to discuss our licensing deal and to plan for the development and launch of the JENNIFER GUCCI bedding and bath line. At that time, we showed Litwak and Ms. Gucci bedding and bath products from Veratex's then-current product line, which Ms. Gucci indicated she liked. While Ms. Gucci met with Veratex designers during this February meeting, to the best of my knowledge she did not provide Veratex's designers with any specific designs created solely by her. To the best of my knowledge, she discussed the designs and styles that she liked from a line that Veratex had already created with Veratex's designers. In fact, to the best of my knowledge, at no time during the development of the JENNIFER GUCCI line did Ms. Gucci design any products for the line.

11. Following our meeting with Litwak and Ms. Gucci in New York in February 2007, we agreed that Veratex would do a preliminary launch consisting of a private showroom showing of the JENNIFER GUCCI bedding and bath line at our New York showroom in the summer of 2007, with the idea that the line would, hopefully, appear in stores in time to coincide with the release of the movie/television series and book. We also put out a press release to the trade to that effect at that time. *See*, Pl. Tr. Ex. 28.

12. Over the course of the next few months, our company began to design product and develop packaging for the JENNIFER GUCCI bedding and bath line. Using the design materials and instructions provided by Litwak, Mr. Springer developed prototype packaging inserts. Litwak communicated directly with Mr. Springer in developing the packaging inserts. The packaging prototypes included the use of the JENNIFER GUCCI name on the front insert, and also included a green-red-green stripe design, and a repeating diamond pattern with

3

overlapping "JG's" at the corners of the diamonds. Litwak had indicated to me that these or similar designs were designs that had previously been used. *See*, Pl. Tr. Exs. 22, 23, 24, 26, 27.

13. During the development of the packaging, I was in contact with both Litwak and Ms. Gucci regarding the packaging for the bedding and bath line. For example, in a series of emails, I sent Jennifer Gucci proposed packaging for her review. In an e-mail dated February 28, 2007, in response to one of my emails, Ms. Gucci wrote "Great looking package." In fact, the only comment I ever remember Ms. Gucci making about the packaging was her suggestion to use the name "Jenny Gucci" rather than "Jennifer Gucci." *See*, Pl. Tr. Exs. 100, 64.

14. With respect to the bedding and bath products, Veratex's designers worked in accordance with their usual routine — they prepared design boards showing different fabrics, color combinations and design elements, which were submitted for my approval. *See*, Pl. Tr. Exs. 69 - 74. While I would show these design boards to Litwak, I do not know whether he was showing them to Ms. Gucci. I did not receive any feedback or criticism from Litwak, or from Ms. Gucci, with respect to the proposed product designs. On several occasions during this period, Jennifer Gucci emailed me to say that she could not wait to see the line of products that we would be launching. As far as I am aware, she had no role in the design or development of the products for the new line. *See*, Pl. Tr. Exs. 67, 75.

15. In late spring – early summer 2007, Collezione, which had been formed shortly prior to that time, entered into a license agreement with Litwak and Jennifer Gucci. See Pl. Tr. Ex. 63. It was my understanding that the agreement further granted Collezione the right of first refusal on all licenses in other product categories, making Collezione the master licensee for all products to be sold under the JENNIFER GUCCI name.

16. During the period February to June 2007, we began to investigate the possibility of entering into JENNIFER GUCCI licenses with third parties in other product categories.

17. Over that period we developed relationships with Louisville Bedding Company, a maker of bedding accessories, to develop a line of bedding accessory products; E.L. Erman - Dead Sea Cosmetics Corp. and related companies ("Erman"), to develop a line of skin care and cosmetics products and to develop lines of jewelry and watches.

18. In addition, we had discussions with Michael Pino, of Therapedic, Inc., a company involved in the manufacture of mattresses, about developing a mattress line, and also about expanding the licensing program internationally.

19. I kept Litwak advised of these discussions and these prospective relationships, and I believe that Litwak approved moving forward with each of them. I also showed Litwak and Jennifer Gucci the packaging that was being developed by Erman during this period. *See* Pl. Tr. Ex. 253.

20. In May 2007, we began to plan for our June 2007 showroom event at our New York showroom. In connection with the event, we took out an advertisement in a trade publication, and printed up invitations that, I believe, were sent to hundreds of prospective industry attendees. We also issued press releases about the showroom event. *See*, Pl. Tr. Exs. 28, 30, 76, 77.

21. The showroom event took place at Veratex's New York showroom from June 19-21, 2007. Litwak and Jennifer Gucci were in attendance. At the showroom event, we displayed packaging materials showing how we intended to use the JENNIFER GUCCI name, the green-red-green design, and the repeating "JG" design. Also on display was a poster created by Erman that depicted photoshopped bottles for the skin care line.. *See*, Pl. Tr. Ex. 157.

5

22. At no time during the showroom event featuring the JENNIFER GUCCI bedding and bath line did Litwak or Jennifer Gucci indicate to me that they had any problem with any of Veratex/Collezione's products or materials. At the showroom event, they both advised me that they were pleased with the packaging designs we had developed. The only issue raised concerned the Erman material, which, according to Litwak, did not follow the court decision from the 1980's.

23. At the June 2007 showroom event, we displayed hundreds of products that Collezione planned to sell. As far as I know, Jennifer Gucci had no involvement in design or development of any of those products.

24. From time to time over the period March to August 2007, I would ask Litwak about the progress of the film about Jennifer Gucci's life in the Gucci family. Each time I asked, Litwak would tell me that the film was to go into production in the near future. In one e-mail, he confirmed this and even informed me that that the film would star Andy Garcia. Litwak also repeatedly told me, as he indicated in this email, that he had other JENNIFER GUCCI projects in the works, including a hotel/casino project, a coffee shop project, and others. *See*, Pl. Tr. Exs. 31, 38, 40. Throughout this period, I trusted Litwak, and his assurances that the film was on track. I have also learned that the film was not made in September 2007, and that the project has been dropped by its supposed producers. The film, the book and the attendant publicity was an important consideration in determining to move forward with this project. I would have had much less interest in this project without the recognition of the JENNIFER GUCCI name and attendant publicity that the movie and the book would generate.

25. In approximately July 2007, I learned for the first time that in January 2007, Litwak had granted a license to a hosiery company in Arizona called Proportion Fit to develop a

6

JENNIFER GUCCI hosiery line. On or about July 14, 2007, I received an email from Brian Jaffe of Proportion Fit, who claimed that he had received a license for JENNIFER GUCCI hosiery products from Litwak and was concerned whether the license was actually legitimate. *See*, Pl. Tr. Ex. 86. I am informed that that Proportion Fit developed its own packaging materials for the hosiery line, but that Litwak had rejected the designs and provided Proportion Fit with materials developed by Veratex to use. While I was upset that Litwak had failed to tell me about the hosiery license, I made an attempt to work with Proportion Fit. I am informed that when Litwak found out that Proportion Fit had contacted the lawyers for Gucci, he terminated the license. *See*, Pl. Tr. Ex. 239.

26. After the June showroom event, the next major trade show where products could be shown was the New York Home Fashion Show in early August 2007. Veratex / Collezione had previously decided not to show the JENNIFER GUCCI line at the August show. Rather, we wanted to continue to develop the line, and to privately show it to buyers after the showroom event.

27. During the period from June to August 2007, we continued our negotiations with Louisville for a bedding license, and Litwak and I reviewed and approved packaging designs for the Louisville line. Although we had not yet signed a license agreement with Louisville, I understand that Louisville was interested in the project and later learned that it was Louisville's intention to launch its JENNIFER GUCCI bedding line at the August 2007 New York Home Fashion Show in New York. *See*, Pl. Tr. Ex. 68.

28. It was never my company's intention to infringe on any trademarks owned by the Gucci company. We acted, we believe, in good faith, in reliance on the representations and assurances of Litwak and Jennifer Gucci.

7

DECLARED UNDER PENALTY OF PERJURY THIS ___ DAY OF JUNE, 2008

_____
Avi Cohen

8