UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

GUCCI AMERICA, INC.,

        Plaintiff,

    - against -

JENNIFER GUCCI, JENCO DESIGNS, LLC, JENNICOR, LLC, JENNY GUCCI COFFEE AND GELATO COMPANY, INC., VERATEX, INC., COLLEZIONE DI CASA, INC., E.L. ERMAN - DEAD SEA COSMETICS CORP., ELE BRANDS ENTERPRISE, INC., GBN WATCH COLLECTION, INC., GBN GLOBAL BUSINESS NETWORK, EDWARD LITWAK d/b/a ED LITWAK & ASSOCIATES, GEMMA GUCCI, GEMMA GUCCI COFFEE AND GELATO COMPANY, INC., ABC CORPORATIONS 1-10, and JOHN DOES 1-10,

        Defendants.

------------------------------------------------------------- x

Civil Action No.
07 cv 6820 (RMB) (JCF)

**WITNESS STATEMENT OF YAKOV ERGAS**
**SUBMITTED BY PLAINTIFF GUCCI AMERICA, INC.**

Yakov Ergas, declares as follows under penalty of perjury:

1. I am / was an officer of E.L. Erman - Dead Sea Cosmetics Corp., ELE Brands Enterprise, Inc., GBN Watch Collection, Inc., and GBN Global Business Network (collectively "Erman").

2. On or about July 13, 2007, Erman entered into sublicense agreements with defendant Collezione di Casa, Inc., an affiliate of Veratex, Inc. (collectively "Veratex"), to make and sell cosmetics and skin care products and watches bearing the JENNIFER GUCCI name. *See*, Pl. Tr. Exs. 57, 60.

3. Erman negotiated the sublicense agreements with Avi Cohen ("Cohen"), president of Veratex, which, Erman understood, held a master license to use the JENNIFER GUCCI name for all products. Also involved in the discussions leading up to the sublicense agreements was Litwak, who, Erman understood, was involved with all rights to the use of the JENNIFER GUCCI name on products, who had licensed the name to Veratex, and who also gave approval to Erman as a sublicensee.

4. The reason we had an interest in developing, manufacturing and selling lines of goods featuring the JENNIFER GUCCI name was that, at the time, we were looking to do a high-end cosmetics line for one of our customers under a brand name different from the names we had used for our cosmetics products in the past. What was interesting to us about the JENNIFER GUCCI name was that she was the wife of Paolo Gucci of the Gucci family that was responsible for creating the well-known GUCCI luxury brand line, and the use of her name, combined with her upcoming movie and book, would give us instant name recognition for our new product line.

5. During our discussions with Cohen and Litwak about an agreement, we were told about a Court decision issued regarding Jennifer Gucci's husband Paolo Gucci, a Gucci family

1

member, allowing him to use his name on products. Erman was informed that it would not be a problem if Jennifer Gucci followed the Court decision in the use of her name on products.

6. In or about late May to early June 2007, an Erman employee developed a photoshopped image of a line of JENNIFER GUCCI cosmetic products, using JENNIFER GUCCI as the brand name for the line. The photoshopped images included the use of the JENNIFER GUCCI name along with design elements that Erman had received from Veratex, including a repeating "JG" design and a crest design that featured a green-red-green stripe. *See*, Pl. Tr. Exs. 43, 45, 46.

7. In early June 2007, I attended a meeting at Veratex's offices, to review and discuss the cosmetics line. Litwak, who was present at this meeting, provided an overview of his plans for branding the JENNIFER GUCCI name, including a movie that was supposedly in production and a book about Jennifer Gucci's life as well as plans for hotels and a chain of coffee shops. With respect to the skin care products, Litwak told me that he expected that we would sell millions of products worldwide. *See*, Pl. Tr. Ex. 47.

8. At the meeting, we showed the photoshopped images we had developed for the JENNIFER GUCCI cosmetic products, complete with the prominent use of the JENNIFER GUCCI brand name, the interlocking "JG" design, and the crest design which featured a green-red-green stripe, to Litwak. We subsequently emailed the photoshopped images to Jennifer Gucci, who had no comment on the proposed packaging, other than to say that she liked it very much, and preferred it in red. *See*, Pl. Tr. Ex. 253.

9. We also sent Jennifer Gucci some samples of the cosmetics products we intended to sell, and she indicated that she liked the products very much. At no time did she design or

2

develop the products other than to inform Erman generally what brands of skin care and cosmetics products she liked. *See*, Pl. Tr. Exs. 47, 254.

10. I am informed that David Elan, a representative of Erman, attended Veratex's New York showroom event in June 2007. I am informed that both Litwak and Jennifer Gucci were present. I am informed that at this event, Erman displayed posters and fliers displaying the packaging for the JENNIFER GUCCI skin care line, but, at that time, neither Litwak nor Jennifer Gucci said anything about any problems with the posters or fliers we had developed. *See*, Pl. Tr. Ex. 157.

11. In or about early July 2007, Erman also indicated an interest in sublicensing the JENNIFER GUCCI name for watches and jewelry. Erman had some previous experience designing, making and selling watches and jewelry, and in view of the fact that it appeared there was going to be a major launch of JENNIFER GUCCI products, and a lot of publicity surrounding a movie about Jennifer Gucci's life as part of the Gucci family, and her book we thought there was an opportunity to sell watches and jewelry under the JENNIFER GUCCI name. We raised the prospect of a watch license with Litwak who said that we should find the right product and pursue it.

12. In connection with seeking a license from Veratex for these products, Erman prepared or caused to be prepared prototype drawings of JENNIFER GUCCI-branded watches that we showed to Veratex in approximately early July 2007. On the face of certain of the watches we included the JENNIFER GUCCI name as well as a crest design which featured a green-red-green stripe. *See*, Pl. Tr. Exs. 58, 61.

3

13. Shortly thereafter, Erman negotiated a watch sublicense with Veratex. *See*, Pl. Tr. Ex. 60. While Erman also wanted to enter into a jewelry license with Veratex, it was decided that we should wait and see how the watches performed before moving into jewelry.

14. At some point in approximately July 2007, Erman posted the photoshopped images of its new JENNIFER GUCCI line of cosmetics products on Erman's website, www.buydeadsea.com, and also on the business-to-business website www.alibaba.com. At this point, we were getting closer to launching the cosmetics line, and we were looking to see what the public and the trade reaction to the line might be. *See*, Pl. Tr. Exs. 55 - 56.

15. Soon after we posted the photos on these websites, we were informed that we should take them down, because we could not sell product that only used the name JENNIFER GUCCI and that Gucci had objected to the items claiming that they infringed certain trademarks owned by Gucci. Erman was surprised by this development, as we had relied on the assurances provided to us by Litwak and Jennifer Gucci that there we would be able to use Ms. Gucci's name if we followed the Court decision.

16. While it is true that Erman was interested in licensing the JENNIFER GUCCI name for cosmetics, jewelry and watches, at no time did we ever wish to infringe the trademarks of Gucci or any other party. It is for that reason that we were willing to agree to immediately stop selling any products using the JENNIFER GUCCI name or any other marks or designs that might infringe any trademark owned by Gucci.

4

DECLARED UNDER PENALTY OF PERJURY THIS 17 DAY OF JUNE, 2008

_____
Yakov Ergas