UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

GUCCI AMERICA, INC.,

          Plaintiff,

- against -

JENNIFER GUCCI, JENCO DESIGNS, LLC,
JENNICOR, LLC, JENNY GUCCI COFFEE AND
GELATO COMPANY, INC., VERATEX, INC.,
COLLEZIONE DI CASA, INC., E.L. ERMAN -
DEAD SEA COSMETICS CORP., ELE BRANDS
ENTERPRISE, INC., GBN WATCH
COLLECTION, INC., GBN GLOBAL BUSINESS
NETWORK, EDWARD LITWAK d/b/a ED
LITWAK & ASSOCIATES, GEMMA GUCCI,
GEMMA GUCCI COFFEE AND GELATO
COMPANY, INC., ABC CORPORATIONS 1-10,
and JOHN DOES 1-10,

          Defendants.

------------------------------------------------------------- x

Civil Action No.
07 cv 6820 (RMB) (JCF)

## WITNESS STATEMENT OF BRIAN L. JAFFE
## ON BEHALF OF PLAINTIFF GUCCI AMERICA, INC.

1

Brian L. Jaffe declares as follows under penalty of perjury:

1. I am the Manager and co-owner of Proportion Fit Products LLC ("Proportion Fit"). I respectfully submit this witness statement in support of Gucci's claims against defendants Edward Litwak d/b/a Ed Litwak & Associates ("Litwak") and Jennifer Gucci.

2. Proportion Fit is a Phoenix, Arizona-based company engaged in the business of designing, manufacturing and selling hosiery products. Proportion Fit's gross annual sales are approximately $1,000,000.00, and we regularly sell to such well-known retailers as Walgreens, Osco, Jewel Food Stores, Albertson's Food Stores, and SuperValu Stores, all under our own brand name PROPORTION FIT.

3. In January 2007, through a business acquaintance named Danny Lee, I was introduced to Litwak. During the course of our meeting, Litwak claimed that he owned the rights to the name JENNIFER GUCCI and that he was involved in licensing those rights in various categories. Litwak then inquired as to whether Proportion Fit would be interested in taking out a license to use the JENNIFER GUCCI name for ladies hosiery.

4. While I had never heard of Jennifer Gucci, I was certainly aware of the GUCCI name, and I asked Litwak whether the use of the JENNIFER GUCCI name would pose any problems. Litwak, however, assured me that there would be no problems with respect to the Gucci company, and further informed me that a Court had decided that Jennifer Gucci had the right to use her name. In light of this, I thought that the proposed license made a lot of sense because of the instant name recognition the product would have among consumers.

5. On or about January 26, 2007, I received a letter from Litwak enclosing a proposed license agreement for the use of the trademark JENNIFER GUCCI in connection with panty hose, regular hosiery, socks, trouser socks, and knee-highs made in large sizes 1x through 6x. The agreement also provided that Proportion Fit would have a right of first refusal for a

2

license to do "regular size" hosiery. Further, the license called for an up-front payment of $10,000, which we negotiated down to $5,000 (the two individuals we were dealing with, Ed Litwak and Danny Lee, said they would put up an additional $5,000 to acquire 5% of the company we would set up to sell the JENNIFER GUCCI line). *See* Pl. Tr. Ex. 87.

6. In addition to the license agreement, Litwak, on or about January 26, 2007, faxed to Proportion Fit what I understood to be suggested designs for packaging for the hosiery product. Included among the suggested designs were several variations of the initials "JG", some of which also included the JENNIFER GUCCI name. *See* Pl. Tr. Ex. 87.

7. On or about February 25, 2007, Proportion Fit paid Litwak $5,000 in accordance with the license agreement, and we then started to work on packaging designs for the hosiery product.

8. On or about February 14, 2007, I emailed to Litwak a proposed logo featuring a stylized version of the initials "JG" and the name JENNIFER GUCCI. Litwak responded to the email the next day, stating that Proportion Fit's proposed design did "not work," and suggested that we have a telephone conversation to discuss the proposed packaging. *See* Pl. Tr. Ex. 35. When I spoke to Litwak, he informed me that Proportion Fit needed to follow certain guidelines for the JENNIFER GUCCI hosiery product, which he would send me.

9. On February 21, 2007, Litwak sent an email to Proportion Fit saying "See if this works better for you." Attached to the email was what appeared to be packaging for a JENNIFER GUCCI sheet set. The packaging prominently displayed the name JENNIFER GUCCI against a background consisting of stripes of green, red and green. The packaging also included a crest design that contained a prominent green-red-green stripe. The reverse side of the packaging prominently displayed the JENNIFER GUCCI name alone, and featured a picture

3

of Jennifer Gucci. Finally, both the front and back of the packaging included a diamond pattern design utilizing a repeating "JG" design, which was similar to one of the designs that Litwak had previously provided. I noted that this design appeared to be similar to a repeating "GG" design that I had seen on GUCCI brand products, but I assumed that Litwak, as the licensor of the JENNIFER GUCCI name, would not have suggested that we use such a design unless he was absolutely sure that the Gucci company would have no problem with it. *See* Pl. Tr. Ex. 36.

10. Based on what I understood to be Litwak's instructions, Proportion Fit redesigned the hosiery packaging. Our resulting packaging design for the JENNIFER GUCCI hosiery product made prominent use of the JENNIFER GUCCI name, a green-red-green stripe, and the repeating "JG" pattern — all of which appeared prominently on the packaging design provided to Proportion Fit by Litwak. *See* Pl. Tr. Exs. 87, 236.

11. On or about March 20, 2007, Litwak sent me another sample packaging design for a JENNIFER GUCCI product. This packaging also made prominent use of the green-red-green stripe and the repeating "JG" pattern. *See* Pl. Tr. Ex. 37.

12. Throughout the period from January to June 2007, I attempted to contact Litwak by phone to try to set up a meeting with Jennifer Gucci to discuss the hosiery line. As we where going to be using her name on a special line of hosiery products, we felt it was important to discuss with her the styles and manufacturing of this new line of products. However, Litwak and Danny Lee kept telling us that Ms. Gucci was traveling in and out of the country, and was unable to set up an appointment. I then became suspicious of Litwak, and began to do my own research about the licensing of the JENNIFER GUCCI name. As a result, I found articles on the Internet indicating that a California company called Veratex, Inc. ("Veratex") held a license to use the JENNIFER GUCCI name.

4

13. On July 14, 2007, I wrote an email to Avi Cohen, who I understood to be the President of Veratex. The purpose of may email was to try to verify that the license agreement I had entered into was legitimate, and to ask Mr. Cohen whether Veratex had run into any problems with the real Gucci company in licensing the JENNIFER GUCCI name. *See* Pl. Tr. Ex. 86.

14. Shortly thereafter, I received a telephone call from Mr. Cohen. In our telephone conversation, Mr. Cohen told me that Litwak had granted Veratex a license to use the JENNIFER GUCCI name for bath and bedding products, and had also given Veratex a right of first refusal with respect to all other product categories. Mr. Cohen told me that his license was intended to be a master license for all product categories, including hosiery products, and he expressed his surprise that Proportion Fit had also received a license from Litwak.

15. Following the telephone conversation with Mr. Cohen, on or about July 14, 2007, I wrote him a letter to express my hope that any conflict between the rights granted to Proportion Fit and the rights granted to Veratex could be worked out. I further told Mr. Cohen that while we had originally developed our own logo for the hosiery products, I had been informed by Litwak that we needed to follow a design template that other licensees were using, which we had done. Along with the letter, I provided Mr. Cohen with a copy of the license agreement with Litwak, correspondence I had had with Litwak, and some examples of the packaging designs we had put together based on Litwak's instructions. *See* Pl. Tr. Ex. 87.

16. As I was also still concerned about the possibility of infringing the rights of the Gucci company, at or about this time I also contacted the Gucci company. I spoke with someone in Gucci's legal department, and told him that Proportion Fit had been approached about

5

becoming a licensee for JENNIFER GUCCI hosiery products. I asked whether Gucci would have any opposition to Proportion Fit's use of the JENNIFER GUCCI name for hosiery.

17. On July 26, 2007, I was contacted by Louis Ederer of Arnold & Porter LLP, counsel for Gucci, responding to my inquiry. I explained my concerns to Mr. Ederer. He told me that I should write him a letter expressing my concerns.

18. On that same day, I responded to Mr. Ederer's request for a letter, and told him that Proportion Fit had executed a license agreement for a line of JENNIFER GUCCI brand hosiery with Litwak and that Proportion Fit had been asked to develop packaging for the JENNIFER GUCCI hosiery line that would conform to packaging designs developed by Veratex. Along with this letter, I enclosed examples of the JENNIFER GUCCI hosiery packaging designs *See* Pl. Tr. Ex. 236.

19. On or about July 30, 2007, I received a letter from Mr. Ederer stating that the Gucci company had sued Ms. Gucci, Mr. Litwak, Veratex and other defendants for trademark infringement and other claims, in connection with the licensing, manufacture and sale of products bearing the JENNIFER GUCCI name. Mr. Ederer further stated that while Proportion Fit had not been sued, Gucci was expecting that Proportion Fit would cooperate by confirming that it would not engage in further activity concerning the development, marketing, manufacture and/or sale of a line of JENNIFER GUCCI hosiery or other products. Mr. Ederer further demanded that Proportion Fit provide him with a copy of the license agreement with Litwak and all correspondence and other documents concerning the license agreement or products bearing the name JENNIFER GUCCI. *See* Pl. Tr. Ex. 237.

20. In response, on that same day, I provided Mr. Ederer with the requested confirmation and materials. *See* Pl. Tr. Ex. 238.

6

21. Shortly thereafter, on July 31, 2007, I received an angry letter by email from Litwak, in which he indicated he was cancelling our license agreement. In the letter, Litwak claimed that Proportion Fit was being terminated because it had failed to get approval for its packaging design for the JENNIFER GUCCI products. Litwak also referred to the fact that I had contacted Gucci in order to ask about whether the license for JENNIFER GUCCI product would cause any trouble, and that I had provided the examples of the JENNIFER GUCCI hosiery packaging designs to Gucci. Litwak further threatened legal action against Proportion Fit. *See* Pl. Tr. Ex. 239.

22. Of course, none of what Litwak said in his July 31, 2007 letter made any sense. The packaging designs created by Proportion Fit were based on the design template that Litwak instructed us to follow. All Proportion Fit ever did was follow his instructions. Litwak's cancellation of our license agreement was obviously motivated by the fact that I had contacted Gucci and provided it with the documentation showing that Litwak had instructed Proportion Fit to design packaging that prominently used not only the name JENNIFER GUCCI, but also a green-red-green stripe design and a repeating "JG" pattern that appeared similar to designs used by Gucci.

23. I want to make sure that this Court understands that it was never my company's intention to infringe on any trademarks owned by Gucci. Proportion Fit is a legitimate company that has never been involved in any dispute like this before. We acted in good faith and in complete reliance on the representations and assurances of Litwak, many of which have now turned out not to be true. As a result, my company has lost not only the $5,000 advance we paid to Litwak, but also the time, money (over $10,000 in graphic design costs and sample packaging costs) and effort we put into developing Jennifer Gucci licensed products (including our work

7

with special hosiery mills to develop a department store grade of Panty Hose, Tights and Body Firmers to meet the quality necessary for the Jennifer Gucci Line).

FROM : P                                    PHONE NO. : 6234873459                   Jun. 14 2008 01:42PM P9

DECLARED UNDER PENALTY OF PERJURY THIS 13th DAY OF JUNE, 2008

_____
Brian L. Jaffe