UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

GUCCI AMERICA, INC.,

           Plaintiff,

   - against -

JENNIFER GUCCI, JENCO DESIGNS, LLC,
JENNICOR, LLC, JENNY GUCCI COFFEE AND
GELATO COMPANY, INC., VERATEX, INC.,
COLLEZIONE DI CASA, INC., E.L. ERMAN -
DEAD SEA COSMETICS CORP., ELE BRANDS
ENTERPRISE, INC., GBN WATCH
COLLECTION, INC., GBN GLOBAL BUSINESS
NETWORK, EDWARD LITWAK d/b/a ED
LITWAK & ASSOCIATES, GEMMA GUCCI,
GEMMA GUCCI COFFEE AND GELATO
COMPANY, INC., ABC CORPORATIONS 1-10,
and JOHN DOES 1-10,

           Defendants.

-------------------------------------------------------------------- x

Civil Action No.
07 cv 6820 (RMB) (JCF)

## WITNESS STATEMENT OF RICHARD GAZLAY
## ON BEHALF OF PLAINTIFF GUCCI AMERICA, INC.

1

Richard Gazlay declares as follows under penalty of perjury:

1. I was the sole owner of Awesome Wines, Inc. ("Awesome Wines"), an Arizona-based wine distributor. I respectfully submit this witness statement in support of Gucci's claims against defendants Edward Litwak d/b/a Ed Litwak & Associates ("Litwak") and Gemma Gucci.

2. I have been involved in the distribution of wine for approximately six years. Approximately three years ago, in mid-2005, Danny Lee, an acquaintance of mine, introduced me to Litwak. The purpose of the introduction was to discuss a license to manufacture, sell and distribute wines under the name GEMMA GUCCI.

3. While I had never heard of Gemma Gucci at the time, and in fact have never actually met her to this day, I had certainly heard of the well-known GUCCI brand. Litwak told me that Gemma was the daughter of a member of the Gucci family that had originally founded the GUCCI brand. Litwak further explained that he had purchased the rights to license the GEMMA GUCCI name, as well as the name of her mother, JENNIFER GUCCI, and informed me that he had the right to license those names for whatever products he wanted, so long as he paid Gemma Gucci and Jennifer Gucci royalties on the sale of any licensed products. My understanding, from what Litwak had told me, was that there would be no conflict with Gucci if I was to proceed with a license to use the GEMMA GUCCI name.

4. Litwak further told me that he had recently cancelled a license for GEMMA GUCCI wine products that had been held by Renaissance Corporation of Utah, and that he was looking for a new licensee to exploit what he considered to be a potentially lucrative product category. In fact, Litwak claimed that with his connections and the television reality show "Rebel Gucci", a reality television show project he was working on with Gemma Gucci, he could help sell more than a million bottles of GEMMA GUCCI wines per year.

2

5. As a result of my discussions with Litwak, I decided to go into business with him and we formed Gemma Gucci Wines, Inc. ("GGW"). GGW, a Nevada corporation, was created on or about September 28, 2005. Danny Lee, Litwak and I were partners in GGW. Litwak made his initial contribution to the corporation of $27,000, and that was his only contribution, although it was our agreement to contribute equal amounts as the business developed. Danny Lee told me he contributed half of Litwak's initial and only investment. While I am informed that Litwak has claimed in this litigation that he invested $50,000 in GGW, this is simply not true. In addition, I am informed and aware that Litwak sold shares in GGW to various investors. Indeed, I am aware that Litwak sold $50,000 worth of stock in GGW to Mary Brand, an individual residing in Fountain Hills, Arizona. He also sold 30 shares of GGW to Donna Gallo and Richard Viccarone, of Cleveland, Ohio. Further, Danny Lee sold 25 shares of GGW to Martin Simone, Litwak's attorney, who lives in Southern California.

6. Upon its formation, GGW entered into a worldwide license agreement with Litwak, effective September 25, 2005, for use of the trademark GEMMA GUCCI in connection with wine products. The agreement called for payment of 7% royalties to Litwak on gross sales, and set a minimum gross sales figure for the first year of the license at $300,000, requiring a minimum total royalty payment of $21,000 in the first year to keep the license going. *See* Pl. Tr. Ex. 182.

7. I was in charge of the day-to-day operations of GGW, and, accordingly, I traveled to vineyards in California to select the wines to be sold under the GEMMA GUCCI name. I never discussed with Gemma Gucci what types of wines she preferred, nor was she involved in actually selecting the wines that I ultimately chose. Further, I was responsible for complying

3

with all of the regulatory requests for the sale and distribution of alcoholic beverage products in the United States, and for finding distributors in various states for the product.

8. With respect to the label design for the wine products, GGW hired a Phoenix, Arizona-based graphic designer to design the labels. While I provided my input on the label design, Litwak was responsible for approving the front label and for the text that appeared on the back label, which stated:

> For over half a century The Gucci Family have hosted lavish dinner and parties for heads of state, queens, kings, and celebrities worldwide. Gemma Gucci, daughter of patriarch Paolo, former head of design for The House of Gucci and granddaughter of Aldo Gucci has selected this special wine for the most discriminating taste. "As I am no longer affiliated with my parents former company Guccio Gucci SPA, I now bring my Florentine tradition especially for you."

*See* Pl. Tr. Ex. 183.

9. GGW ultimately ordered approximately 800 cases of GEMMA GUCCI wine from a California vineyard. The majority of the wine was distributed in Arizona, but I was able to find distributors to sell small quantities in Ohio. Litwak's claimed connections that would make GEMMA GUCCI wine into a million bottle brand never materialized, and in fact, he never helped sell a single bottle of wine nor produced the television reality show.

10. By early 2007, I realized I was putting far more effort and expense into the GEMMA GUCCI wine venture than either of my partners. Overall, I spent more than $100,000 developing and attempting to market the product. Meanwhile, Litwak and Danny Lee put nothing more into the company. Nevertheless, Litwak continued to insist that GGW pay the minimum royalties, which Litwak told me were going to be paid directly to Gemma Gucci.

11. In April 2007, Litwak informed me that he was terminating the GEMMA GUCCI license to GGW, for failure to pay royalties. *See* Pl. Tr. Ex. 185. I did not fight Litwak on this, because I could see the venture was going nowhere, but I at least wanted to make sure that I was

4

compensated for the substantial expenses I had incurred. In an April 24, 2007 email, I informed Litwak that I wanted to meet with him to review all of the expenses that I had incurred and to wind up the affairs of GGW. In response, Litwak sent me an email objecting to my expenses, claiming that they had not been approved by him or Danny Lee. Further, he threatened me with legal action if I did not repay his initial investment. *See* Pl. Tr. Ex. 186, 188.

12. Rather than litigating with Litwak over my expenses, I eventually agreed to repay his initial investment in GGW less moneys loaned to Danny Lee, which resulted in an amount of $21,000. As Litwak claimed that he had already paid $21,000 in royalties to Gemma Gucci, he insisted that I make the check payable to him. And while I saw Litwak had made out a corresponding check to Gemma Gucci, I am now informed that in this litigation Gemma Gucci testified that she never received any money from the wine venture.

13. In addition to my involvement with GGW, I paid Danny Lee $5,000 for 20% of the stock in a Litwak company named Gemma Gucci Coffee and Gelato, Inc. ("Gemma Coffee"), another Litwak venture formed for the purpose of exploiting the GEMMA GUCCI name. I also paid Danny Lee $5,000 for 20% of the stock in another company named De Riera for Gemma Gucci, Inc. ("De Riera"). I am further informed that, although Litwak was aware that Gemma Coffee was named as a defendant in this lawsuit, he has not taken any steps to file an Answer to the Complaint on behalf of Gemma Coffee and that the company is now in default in this litigation. I, along with another investor in Gemma Coffee, feel we have been duped by Litwak into making these investments, and have become suspicious that he does not own the rights to the GEMMA GUCCI name.

14. As a result of my involvement with Litwak, I have lost over $100,000, not to mention the enormous amount of time and effort I put into developing the GEMMA GUCCI

5

wine products. In doing so, I never intended to infringe on any trademarks owned by Gucci, but instead acted in good faith and in complete reliance on the representations and assurances of Litwak, that he had the right to exploit the GEMMA GUCCI name.

DECLARED UNDER PENALTY OF PERJURY THIS 17 DAY OF JUNE, 2008

_____
Richard Gazlay