UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

GUCCI AMERICA, INC.,

            Plaintiff,

    - against -

JENNIFER GUCCI, JENCO DESIGNS, LLC, JENNICOR, LLC, JENNY GUCCI COFFEE AND GELATO COMPANY, INC., VERATEX, INC., COLLEZIONE DI CASA, INC., E.L. ERMAN - DEAD SEA COSMETICS CORP., ELE BRANDS ENTERPRISE, INC., GBN WATCH COLLECTION, INC., GBN GLOBAL BUSINESS NETWORK, EDWARD LITWAK d/b/a ED LITWAK & ASSOCIATES, GEMMA GUCCI, GEMMA GUCCI COFFEE AND GELATO COMPANY, INC., ABC CORPORATIONS 1-10, and JOHN DOES 1-10,

            Defendants.

------------------------------------------------------------------ x

Civil Action No.
07 cv 6820 (RMB) (JCF)

## WITNESS STATEMENT OF RANDY SIZEMORE ON BEHALF OF PLAINTIFF GUCCI AMERICA, INC.

Randy Sizemore declares as follows under penalty of perjury:

1. I am the President of Infinity International, a Denver, Colorado-based corporation d/b/a Leather Creations. I respectfully submit this witness statement in support of Gucci's claims against defendants Edward Litwak d/b/a Ed Litwak & Associates ("Litwak") and Gemma Gucci.

2. I have been involved in the design, manufacture and sale of apparel and fashion accessories and other fine leather goods for the past ten years. About three and a half years ago, I met John Macaluso of Phoenix, Arizona. I learned that Mr. Macaluso was the owner of a company named De Riera for Gemma Gucci, Inc. ("De Riera"), a Nevada corporation. Mr. Macaluso informed me that the business of De Riera was to design and manufacture handbags under the GEMMA GUCCI name, which De Riera had been licensed to use.

3. While I had never heard of an individual named Gemma Gucci, I had obviously heard of the GUCCI brand. Mr. Macaluso explained that Gemma Gucci was the daughter of Paolo Gucci, a member of the Gucci family and a former designer for the GUCCI brand. I further learned that De Riera held a license to use the GEMMA GUCCI name in connection with the manufacture and sale of handbags. Mr. Macaluso explained that he had received the license from an individual named Edward Litwak ("Litwak"), who claimed to own the rights to the GEMMA GUCCI name, as well as the rights to the name of her mother, JENNIFER GUCCI. Mr. Macaluso further explained that Litwak had told him that there would be no issues with the Gucci company because a court had determined that Gemma Gucci and Jennifer Gucci could use their names in conjunction with products.

4. Before committing to getting involved in De Riera's business, I met with Litwak in or around September-October 2005 in Denver, Colorado. Litwak confirmed to me what Mr. Macaluso had told me, namely that he represented Gemma Gucci and held the rights to license

her name. Further, Litwak told me that he wanted me to partner with Mr. Macaluso because he did not think Mr. Macaluso had the ability to bring product to the market, and proposed that we would eventually restructure the De Riera license to include my company.

5.  With respect to the products themselves, Litwak told me that he was looking for low cost handbags that could be sold on QVC or Home Shopping Network. With respect to designs, Litwak suggested that I use design elements that I knew Gucci was famous for, such as the GUCCI horsebit design. I told Litwak that I would not infringe the intellectual property rights of others.

6.  As De Riera did not have much money, in lieu of compensation I was promised that I would become the exclusive manufacturer for the GEMMA GUCCI handbags. I ultimately agreed with Mr. Macaluso to become involved with De Riera and, using my contacts in the fashion and manufacturing industries, I began to assist Mr. Macaluso with designing and developing handbags to be sold under the GEMMA GUCCI name.

7.  While Mr. Macaluso and I made a good team, seeking approval for our designs through Litwak and his associate Danny Lee was frustrating. Further, my repeated requests to meet with Gemma Gucci to discuss the handbag designs were never responded to favorably. Despite these issues, in January 2007, I began to work with some of my designer contacts in Brazil and by April 2007 had begun to submit handbag designs for Litwak's approval through Danny Lee. By July 2007, we had developed a line of handbags that were ready to be introduced to the public. *See* Pl. Tr. Ex. 247.

8.  In late August 2007, Mr. Macaluso and I presented the GEMMA GUCCI handbags at the MAGIC Show in Las Vegas, the annual trade show for the fashion, apparel and accessories industry.

9. Following the MAGIC Show, we identified an opportunity to promote the GEMMA GUCCI handbags at the Phoenix (Arizona) Fashion Week, a series of fashion shows intended to highlight Phoenix-area boutiques and designers, which was scheduled to begin in early November 2007. In advance of Phoenix Fashion Week, we arranged with D. Frank Designs, a Scottsdale, Arizona furniture boutique, to hold a party featuring the GEMMA GUCCI handbags in the D. Frank Designs store on October 19, 2007.

10. Just before Phoenix Fashion Week, on or about November 4, 2007, I met with Litwak in Denver, Colorado to discuss the marketing and promotion of the GEMMA GUCCI handbag line, including a promotional event that we were looking to put together in Los Angeles, California. From my perspective, the primary purpose of our meeting was to discuss where we were going with the GEMMA GUCCI handbags and how we fit into the overall licensing picture. In fact, during his visit, I introduced Litwak to several potential investors. Litwak, however, who had approved the handbag line as well as our efforts to promote GEMMA GUCCI handbags at Phoenix Fashion Week, expressed his concern that De Riera did not have deep enough pockets to properly promote the GEMMA GUCCI handbags. Litwak claimed that De Riera owned him $270,000 in back royalties and claimed that he was going to take the license away from Mr. Macaluso. He even offered to sell me the license for $200,000 once he took it away from Mr. Macaluso.

11. I traveled to Phoenix for Phoenix Fashion Week with deep misgivings about Litwak. By this point, I had become very suspicious of his claimed relationship with Gemma Gucci. I was particularly bothered by the fact that I had yet to meet her and that all of my request to do were denied. My attorney, who I had asked to look into Litwak, suggested that I try to find a way to contact Gemma Gucci directly.

12. That opportunity presented itself during Phoenix Fashion Week, when I met a woman named Brooke Palmer, who told me that she had been a schoolmate of Gemma Gucci's. Ms. Palmer asked whether she could speak with Gemma Gucci, who she assumed would be attending the fashion show. I told Ms. Palmer that Gemma was not in attendance.

13. In light of my concerns regarding Gemma Gucci's knowledge of what we were doing with the GEMMA GUCCI handbags, I subsequently emailed Ms. Palmer to ask if she forward my contact information to Gemma Gucci for me. As I wrote in the email, "If it is possible I am not sure she even seen any of the collection do you think you could pass along our information so that maybe we could touch base with her about the collection as the designer I have always wanted to talk to her about her thoughts and something that matched her personally." *See* Pl. Tr. Ex. 248. I did not receive a response to my email.

14. On or about November 11, 2007, after discussing the situation with Mr. Macaluso, I emailed a proposal to Litwak, in which I attempted to resolve the past royalty issue and sought to clarify the relationship of the parties. *See* Pl. Tr. Ex. 255. In response, on November 12, 2007, I received an email from Litwak claiming that I had insulted him and that he was cancelling the De Riera license for non-payment. *See* Pl. Tr. Ex. 256.

15. While Litwak purported to terminate the De Riera license, I am aware that he was subsequently in contact with Mr. Macaluso and that they were discussing a renegotiated license. In February 2008, however, I learned that Gemma Gucci had also been named in the lawsuit that Gucci America, Inc. had initially brought against Litwak and Jennifer Gucci. After learning about Gemma Gucci's involvement in the lawsuit, Mr. Macaluso and I put all of our activity relating to the GEMMA GUCCI handbag line on hold.

16. I am informed that Litwak has testified at a deposition in this action that the promotion of GEMMA GUCCI handbags during Phoenix Fashion Week was done without his knowledge or authorization; that he did not learn about the Phoenix Fashion Week show until after it occurred; that he was not involved in any discussions regarding an event in Los Angeles to promote GEMMA GUCCI handbags; and that he never saw or received any samples of the GEMMA GUCCI handbags we had designed. All of these statements are completely false. Litwak had direct knowledge of all of our efforts to promote the GEMMA GUCCI handbags in October and November 2007. Further, I am aware that Litwak continued to offer licenses for the use of both the GEMMA GUCCI and JENNIFER GUCCI names after this lawsuit commenced, including offering a GEMMA GUCCI handbag license to me in November 2007.

DECLARED UNDER PENALTY OF PERJURY THIS 17 DAY OF JUNE, 2008

*[signature]*
Randy Sizemore