UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
GUCCI AMERICA, INC.,

                Plaintiff,

-against-

JENNIFER GUCCI, JENCO DESIGNS, LLC,
JENNICOR, LLC, JENNY GUCCI COFFEE AND
GELATO COMPANY, INC., VERATEX, INC.,
COLLEZIONE DI CASA, INC., E.L. ERMAN-
DEAD SEA COSMETICS CORP., ELE BRANDS
ENTERPRISE, INC., GBN WATCH
COLLECTION, INC., GBN GLOBAL BUSINESS
NETWORK, EDWARD LITWAK d/b/a ED
LITWAK & ASSOCIATES, GEMMA GUCCI,
GEMMA GUCCI COFFEE AND GELATO
COMPANY, INC., ABC CORPORATIONS 1-10,
and JOHN DOES 1-10,

                Defendants.
_____X

Civil Action No. 07 CV 6820
(RMB)(JCF)

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE GERMAN COURT JUDGMENT/SETTLEMENT**

---

HARRINGTON, OCKO & MONK, LLP
81 Main Street, Suite 215
White Plains, NY 10601
(914) 686-4800

*Attorneys for Defendants Jennifer Gucci, Jenny Gucci Coffee and Gelato Company, Inc., Edward Litwak d/b/a Ed Litwak & Associates, and Gemma Gucci*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................-ii-

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    A.    The German Court Judgment/Settlement is Relevant to the Issue of Defendants' Willfulness or Bad Faith. ................................................................... 3

    B.    The April 2000 German Court Judgment/Settlement is Relevant to the Issues of Plaintiff's Judicial Estoppel, Acquiescence and Equitable Estoppel. ..................... 4

    C.    Second Circuit Case Law Does Not Require Exclusion of the German Court Judgment/Settlement. ................................................................................... 8

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Berkshire Fashions, Inc. v. Sara Lee Corp.*, 729 F.Supp. 21 (S.D.N.Y. 1990) .............................. 3

*Gentile v. County of Suffolk*, 129 F.R.D. 435 (E.D.N.Y. 1990) ...................................................... 2

*George W. Luft Co. v. Zande Cosmetic Co.*, 142 F.2d 536 (2nd Cir. 1944) .................................. 11

*Gordon & Breach Science Publishers, S.A. v. American Institute of Physics*,
  166 F.3d 438 (2nd Cir. 1999) .......................................................................................... 3

*Highland Capital Management LLP v. Schneider*, 2008 WL 282769
  (S.D.N.Y. Jan. 31, 2008) ................................................................................................ 2

*Hiland Potato Chip Co. v. Culbro*, 585 F.Supp. 17 (S.D.Iowa 1982) ............................................ 7

*Johnson & Johnson v. Activas Group H.F.*, 2008 WL 228061
  (S.D.N.Y. Feb. 21, 2008) ............................................................................................ 6, 7

*Larsen v. Ortega*, 816 F.Supp. 97 (D.Conn. 1992) ........................................................................ 3

*Momentum Luggage v. Jansport, Inc.*, 2001 WL 1388063 (S.D.N.Y. Nov. 8, 2001) .................... 3

*NYSE, Inc. v. Gahry*, 2003 WL 68038 (S.D.N.Y. Jan. 8, 2003) .................................................... 3

*Orto Con Serviera v. Bio Conserve*, 1999 WL 47258 (S.D.N.Y. Feb. 3, 1999) ............................ 3

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266 (2nd Cir. 1999) ...................... 11

*PDK Labs, Inc. v. Freelander*, 1995 WL 459256 (S.D.N.Y. Aug. 3, 1995) .................................. 5

*Price v. Fox Ent. Group, Inc.*, 2007 WL 1498321 (S.D.N.Y. May 22, 2007) ................................ 5

*SCFB Holt LLC v. Collin Stewart Ltd.*, 2004 WL 1794499 (S.D.N.Y. Aug. 10, 2004) .............. 11

*The Christopher D. Smith Foundation, Inc. v. St. Luke's-Roosevelt Hospital
  Center*, 2003 WL 115234 (S.D.N.Y. Jan. 13, 2003) ...................................................... 5

**Page**

**Statutes**
15 U.S.C. §1117 ................................................................................................................ 3, 4

**Rules**
FRE 401 ............................................................................................................................ 1-3
FRE 402 ............................................................................................................................ 1-3

Defendants, JENNIFER GUCCI, JENNY GUCCI COFFEE AND GELATO COMPANY, INC., EDWARD LITWAK d/b/a ED LITWAK & ASSOCIATES and GEMMA GUCCI (collectively "Defendants"), by and through their counsel, Harrington, Ocko & Monk, LLP, respectfully submit the following Memorandum of Law in Opposition to Plaintiff, GUCCI AMERICA, INC. ("Plaintiff" or "Gucci America") Motion *in Limine* to preclude Defendants from introducing into evidence at trial an April 19, 2000 German Court Judgment/Settlement:

## PRELIMINARY STATEMENT

As part of its all-out war against actual members of the Gucci family for alleged trademark infringement, Gucci America has moved to preclude Defendants from submitting into evidence a German Court Judgment/Settlement entered into by Gucci America's Italian parent corporation, Gucci S.p.A., and an authorized licensee of Defendant, Gemma Gucci, Flitsch & Bendayan GmbH ("Flitsch"). The German Court Judgment/Settlement allows for the use of Gemma Gucci's name in connection with the sale of jewelry products so long as Gemma Gucci's entire name is preceded by the terms "styled by" or "designed by". Plaintiff asserts in its motion *in limine* that the German Court Judgment/Settlement between its parent corporation and Flitsch allowing Defendant Gemma Gucci and her licensee(s) to use Gemma's surname "Gucci" is not relevant to any of the issues involved in this litigation.

Plaintiff's request to preclude the German Court Judgment/Settlement must fail as preclusion would violate the liberal standards accorded to the introduction of evidence under Federal Rules of Evidence 401 and 402. The German Court Judgment/Settlement bears directly on important issues in this case; namely, whether Defendants had a reasonable, good faith belief that their use of their surname "Gucci" is appropriate if Defendants followed the guidelines

1

provided for by the German Court Judgment/Settlement, and agreed upon by Gucci America's parent corporation, Gucci S.p.A.

Furthermore, the German Court Judgment/Settlement between Gucci America's Italian parent corporation and an authorized licensee of Defendant Gemma Gucci with regard to the use of Defendant's surname "Gucci" provides support for this Court to equitably and/or judicially estop Gucci America from now asserting before this Court that neither Jennifer Gucci nor Gemma Gucci can use their surname in any fashion; even if Gemma Gucci and Jennifer Gucci use their surname in a manner which abides by the provisions of the German Court Judgment/Settlement agreed upon by Gucci America's parent, Gucci S.p.A. Lastly, the German Court Judgment/Settlement is admissible under Second Circuit case law. Therefore, the Court should deny Plaintiff's Motion *in Limine* requesting that the Court preclude the German Court Judgment/Settlement from being introduced into evidence.

## ARGUMENT

Federal Rule of Evidence 401 defines relevant evidence as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". FRE 401. Rule 401 is read in conjunction with Rule 402 which requires that "all relevant evidence is admissible". FRE 402. Courts have interpreted Rules 401 and 402 together to express the general Federal policy underlying the Federal Rules of Evidence, a policy which favors liberal admission of evidence. *Gentile v. County of Suffolk*, 129 F.R.D. 435, 444 (E.D.N.Y. 1990). The standard for evidence to be considered relevant under the Federal Rules of Evidence 401 and 402 is not high. *Highland Capital Management LLP v. Schneider*, 2008 WL 282769, at *1 (S.D.N.Y. Jan. 31, 2008).

### A. The German Court Judgment/Settlement is Relevant to the Issue of Defendants' Willfulness or Bad Faith.

Plaintiff Gucci America contends that the April 2000 German Court Judgment/Settlement between Gucci America's Italian parent, Gucci S.p.A., and Flitsch, an authorized licensee of Defendant Gemma Gucci, is irrelevant to these proceedings, and therefore, should not be admitted into evidence pursuant to Federal Rules of Evidence 401 and 402. Plaintiff's position is without merit, particularly as to its claims against Defendants for attorneys' fees under the Lanham Act, 15 U.S.C. §1117.

Under the Lanham Act, a party is entitled to reasonable attorneys' fees <u>only</u> in exceptional cases. 15 U.S.C. §1117(a)(3). Attorneys' fees can only be awarded under §1117 based on evidence of fraud or bad faith. *Gordon & Breach Science Publishers, S.A. v. American Institute of Physics*, 166 F.3d 438, 439 (2nd Cir. 1999); *NYSE, Inc. v. Gahry*, 2003 WL 68038, at *3 (S.D.N.Y. Jan. 8, 2003); *Orto Con Serviera v. Bio Conserve*, 1999 WL 47258, at *4 (S.D.N.Y. Feb. 3, 1999). Exceptional cases under the Lanham Act are those in which acts of infringement can be characterized as malicious, fraudulent, deliberate or willful. *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 729 F.Supp. 21, 22 (S.D.N.Y. 1990). Courts have found that even in instances in which a defendant's conduct is considered deliberate, deliberate conduct is not sufficient to cause a case to be characterized as exceptional for purposes of attorneys' fees under the Lanham Act. *Larsen v. Ortega*, 816 F.Supp. 97, 113 (D.Conn. 1992). Courts have declined to award attorneys' fees under the Lanham Act even if claims/defenses were deemed meritless, if the party had a reasonable belief that it could use the mark at issue. *Momentum Luggage v. Jansport, Inc.*, 2001 WL 1388063, at *7 (S.D.N.Y. Nov. 8, 2001).

In this instance, Defendants intend to offer the April 2000 German Court Judgment/Settlement as evidence of their good faith, reasonable belief that they are entitled to

3

use labels and/or disclaimers, and promote products designed, styled or selected by them as long as they follow the dictates of the German Court Judgment/Settlement; namely, that Jennifer Gucci and Gemma Gucci can promote, market and sell products, in particular, jewelry, as long as they present the words "styled by and/or designed by" on such labels and disclaimers in conjunction with their first name and surname "Gucci". Defendants have a reasonable, good faith belief that the German Court Judgment/Settlement between Gucci America's Italian parent, Gucci S.p.A., and Flitsch, an authorized licensee of Defendant Gemma Gucci, represented an understanding by the Gucci corporate group (including Gucci America) that as long as Jennifer Gucci and Gemma Gucci ensure that the phrase, "styled by and/or designed by" preceded their names, they can use their surnames in conjunction with the marketing, promotion and sale of goods in which they played a role designing, selecting or styling.

Therefore, because Gucci America is suing Defendants for attorneys' fees and treble damages (which requires a showing of willfulness) under §1117 of the Lanham Act, and Defendants' state of mind is at issue with regard to their reasonable, good faith belief that they have a right to sell, market and promote goods using labels and/or the disclaimers "styled by and/or designed by" pursuant to the German Court Judgment/Settlement, the April 2000 German Court Judgment/Settlement is very relevant to an important issue in this action, and Defendants should be allowed to admit this material into evidence in this matter.

### B. The April 2000 German Court Judgment/Settlement is Relevant to the Issues of Plaintiff's Judicial Estoppel, Acquiescence and Equitable Estoppel.

In addition to bearing on the issue of Defendants' alleged willfulness and state of mind for purposes of attorneys' fees under the Lanham Act, the April 2000 German Court Judgment/Settlement also bears on Defendants' equitable defenses in this matter; namely, judicial estoppel, acquiescence, and equitable estoppel with respect to Plaintiff's claims of

4

infringement and counterfeiting. *Price v. Fox Ent. Group, Inc.*, 2007 WL 1498321, at *1 n.1 (S.D.N.Y. May 22, 2007).

Under the doctrine of judicial estoppel, a court can preclude a party from taking inconsistent factual positions in separate proceedings in order to prevent litigants from playing fast and loose with the courts. *PDK Labs, Inc. v. Freelander*, 1995 WL 459256, at *5 (S.D.N.Y. Aug. 3, 1995). The doctrine of estoppel can bind not only the actual parties to a lawsuit, but also their privies, and literal privity need not exist. *The Christopher D. Smith Foundation, Inc. v. St. Luke's-Roosevelt Hospital Center*, 2003 WL 115234, at *3 (S.D.N.Y. Jan. 13, 2003).

The German Court Judgment/Settlement relates directly to Defendants' defense of judicial estoppel in this matter. Gucci America's Italian parent, Gucci S.p.A., was sued in Germany by an authorized licensee of Gemma Gucci over whether that authorized licensee could market, promote and sell items, in particular jewelry, using labels and/or disclaimers which indicated such jewelry was "designed by/styled by" Gemma Gucci. In April 2000, Gucci S.p.A. settled with Defendant Gemma Gucci's authorized licensee, Flitsch, in a final Judgment/Settlement issued by the German Court, the terms of which Gucci America's parent corporation, Gucci S.p.A., agreed to. In that final Judgment/Settlement, Gucci S.p.A. agreed that Flitsch/Gemma Gucci could sell, promote and/or market jewelry under her name using the label and/or disclaimer "designed by/styled by" Gemma Gucci.

In this action, Gucci America now takes exactly the <u>opposite</u> position, asserting that neither Gemma Gucci nor Jennifer Gucci can use their surname <u>at all</u>, in any context on any merchandise and services. Plaintiff now takes this position after knowing or having knowledge of the fact that Defendants have marketed, promoted and sold merchandise using the label and/or disclaimer "designed by/styled by" before their surname "Gucci" in compliance with the German

5

Court Judgment/Settlement, and with Gucci S.p.A.'s acknowledgment that such conduct is proper. It would be inequitable to allow Gucci America (through its parent corporation) to, on the one hand, agree that Defendants could promote, market and sell products, in particular, jewelry, using the designation "designed by/styled by" Gemma Gucci or Jennifer Gucci for some 7 years, and now, assert exactly the opposite position in this action. Thus, the German Court Judgment/Settlement is extremely relevant to Defendants' defense of judicial estoppel, and should be admitted for that purpose.

The German Court Judgment/Settlement also bears on Defendants' defense of acquiescence. Under the defense of acquiescence, a defendant need show that: (1) the senior user actively represented that it would not assert a right or claim; (2) the delay between the active representation and the assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. *Johnson & Johnson v. Activas Group H.F.*, 2008 WL 228061, at *9 (S.D.N.Y. Feb. 21, 2008). Active consent is implied by conduct on plaintiff's part that amounts to an assurance, express or implied by the plaintiff, that plaintiff would not assert trademark rights against the defendant. *Id.*

The German Court Judgment/Settlement demonstrates Plaintiff's acquiescence to Defendants' rights to use their surname "Gucci" on products they promote, market or sell as long as Defendants do so in accordance with the provisions of the German Court Judgment/Settlement. The German Court Judgment/Settlement between Gucci America's Italian parent corporation and Defendants' authorized licensee, Flitsch, indicates an agreement by Plaintiff's corporate affiliate that Defendants could use the surname "Gucci" on products promoted, marketed and sold by them or their licensees as long as those products contained a

6

label and/or disclaimer indicating that the product was "designed by/styled by" Gemma Gucci or Jennifer Gucci.

There has now been an almost 7-year period between the time of the German Court Judgment/Settlement and Plaintiff's claims of trademark infringement and counterfeiting in this action. During that 7-year period, Defendants, in good faith, sold, marketed and/or promoted products pursuant to the requirement of the German Court Judgment/Settlement, with the full knowledge of such conduct by Gucci, and with the reasonable belief that this conduct was okay. Plaintiff's infringement claims in this action represent a 180° change from the position of its Italian parent corporation as to the appropriateness of Defendants' conduct. As a result of Plaintiff's complete change of position as to Defendants' ability to use their surname to promote and sell products, Defendants will suffer undue and extreme prejudice. Namely, Defendants have, in good faith, entered into negotiations and conducted business for years with various businesses and TV/movie producers to use the surname "Gucci", in accordance with prior legal precedence, and agreements with Gucci S.p.A., and will suffer detriment due to Plaintiff's sudden change of stance Therefore, the German Court Judgment/Settlement bears directly on the issue of Plaintiff's acquiescence in Defendants' use of the surname "Gucci" to promote, market and sell products and services, and it should be admitted for those purposes.

The German Court Judgment/Settlement is also relevant to the issue of equitable estoppel. In order to establish equitable estoppel, a party must show: (1) a representation by the plaintiff; (2) reasonable reliance by the defendant; and (3) prejudice. *Id.*; *Hiland Potato Chip Co. v. Culbro*, 585 F.Supp. 17, 22 (S.D.Iowa 1982). Equitable estoppel may also be found when a plaintiff has been silent in circumstances where there was reasonable expectation that the injured plaintiff would assert its rights. *Johnson*, 2008 WL 228061.

The German Court Judgment/Settlement is directly related to issues regarding Defendants' assertion of equitable estoppel as a defense in this action. The German Court Judgment/Settlement indicates that Plaintiff's parent corporation made a representation to Defendants and/or their authorized licensees that Defendants could utilize their surnames "Gucci" in the promotion, marketing and sale of products, in particular, jewelry, as long as the products contained a label and/or disclaimer indicating "designed by/styled by" Jennifer Gucci or Gemma Gucci. Defendants relied on the German Court Judgment/Settlement, and the agreement of Plaintiff's corporate parent that as long as they acted within the confines of such Judgment/Settlement, these actions were appropriate. Defendants have abided by the terms of the agreement for some 7 years.

Defendants will suffer extreme prejudice now, if Plaintiff is allowed to essentially adopt a contrary position from that agreed upon in the German Court Judgment/Settlement, and assert in this litigation that Gemma Gucci and Jennifer Gucci are not allowed to use their surname at all, in any context regarding the marketing, promotion and sale of goods which they helped design or played a part in selecting. Thus, the German Court Judgment/Settlement is also admissible for purposes of Defendants establishing equitable estoppel as a defense in this matter.

C.  **Second Circuit Case Law Does Not Require Exclusion of the German Court Judgment/Settlement.**

Plaintiff's citations to various cases regarding the admissibility of the actions of foreign tribunals and/or trademark offices for the proposition that the German Court Judgment/Settlement should not be admitted in this action are inapposite; in those actions, the judgments and/or agreements at issue were not offered for purposes of establishing affirmative defenses as to allegations of willfulness or bad faith, or equitable defenses. More importantly,

8

contrary to Plaintiff's position, Second Circuit case law specifically allows courts to refer to the decisions of foreign tribunals regarding issues in trademark disputes in U.S. courts.

The *Fuji Photo Film Co.* decision cited by Plaintiff is of no consequence, as that action did not involve the admission in to evidence of the decision of a foreign court or the agreement between parties regarding trademark usage in a foreign territory. Instead, the *Fuji* decision contained a <u>general</u> statement about the concept of territoriality in United States trademark law.

Similarly, in *Kos*, the issue was whether the marks were similar or not. The court indicated in *Kos* that statements made by plaintiff in European trademark proceedings were inapplicable in that action because the European proceedings involved <u>different</u> marks, <u>different</u> goods and <u>different</u> legal standards; unlike the acts alleged by Plaintiff against Defendants here regarding very similar if not identical disclaimers. Again, the *Kos* court cited to the general concept of territoriality with regard to United States trademark law. Furthermore, unlike this case, the *Kos* case did not appear to present the court with the issues of willfulness, bad faith, estoppel, acquiescence or laches.

The court's holding in *Osawa* is also of no consequence as again, the *Osawa* court merely recognized in dicta the doctrine of territoriality in United States trademark law; the facts of that case have absolutely no resemblance to the facts and issues involved in this action.

The decision in *Vanity Fair* is likewise inapposite as the dicta in that case regarding foreign judgments has nothing whatsoever to do with the admission of evidence. Instead, the court in *Vanity Fair* dealt with jurisdictional matters with respect to where the infringement took place, and the extra territorial enforcement of the Lanham Act.

The holding in *Remy Martin* (a case outside this circuit) is also inapplicable to this action. The issue in *Remy Martin* was whether the trial court could properly recognize, in the context of

a trademark action in the United States, defendant's use of the mark abroad, and agreements between the parties to such use overseas. The *Remy Martin* court <u>did</u> <u>not</u> have before it the issue of defendant's state of mind with regard to willfulness or bad faith, nor did defendant apparently assert that such agreements amounted to acquiescence, equitable or judicial estoppel. Furthermore, the *Remy Martin* case dealt with preliminary injunction, and not admissibility of evidence for purposes of a trial.

Plaintiff's citation to the holding in *Greenlight Capital* is also of no consequence as the issue before the court in that case was *forum non conveniens*, not the admissibility of a judgment or settlement agreement between parties in a foreign court. Likewise, the holding in *Calzaturificio* does not apply to this action. In that action, on motions for summary judgment, neither side put forth the issue of willfulness, bad faith as to attorneys' fees, or the defenses of acquiescence or judicial/equitable estoppel.

Indeed, Plaintiff's citation to *Juicy Couture, Inc.* supports the inclusion in to evidence of the German Court Judgment/Settlement in this matter. The *Juicy Couture* court specifically referred to the actions and conduct of plaintiff Couture in Europe, including trademark proceedings, in coming to its decision in that matter. Furthermore, unlike here, in *Juicy* there was actually no "final decision" by a foreign court that the parties were requesting that the *Juicy* court recognize. Rather, the issue involved review by the *Juicy* court of only a "draft" opinion of an official in a French trademark office regarding defendant's trademark application. That is in stark contrast to the German Court Judgment/Settlement where the German Court actually issued a judgment and settlement, and the parties <u>agreed</u> on it.

Moreover, and more importantly, several courts in the Second Circuit have actually allowed into evidence and referenced the decisions of foreign tribunals in trademark actions. In

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 272 (2nd Cir. 1999), the Second Circuit reversed a district court decision which was based on the erroneous exclusion of the ruling of a Japanese trademark office denying a plaintiff's trademark rights in Japan. The Second Circuit in *Otokoyama* indicated that the district court erroneously made its decision based on the holding in *Vanity Fair Mills, Inc.* The Second Circuit in *Otokoyama* specifically stated that, while the *Vanity Fair* opinion was a general statement regarding the decisions of foreign tribunals, it did not follow, "however, that foreign court decisions are *never* relevant or admissible for any purpose in a trademark dispute". (Emphasis in original). Indeed, the *Otokoyama* court indicated that its opinion that the district court erroneously excluded the decision of a foreign tribunal regarding trademark issues was supported by the Second Circuit's decision in *George W. Luft Co. v. Zande Cosmetic Co.*, 142 F.2d 536, 539 (2nd Cir. 1944); the *Luft* court held that foreign decisions *were* relevant and admissible in trademark proceedings. See also *SCFB Holt LLC v. Collin Stewart Ltd.*, 2004 WL 1794499 at *4 (S.D.N.Y. Aug. 10, 2004).

Given the *Otokoyama* court's decision, and that of its progeny, allowing introduction of a foreign tribunal decisions in proceedings regarding trademark rights in the United States, Plaintiff's position that the decisions of foreign tribunals are never admissible and are wholly irrelevant, is simply unsupported by the case law in the Second Circuit.

11

## CONCLUSION

For the foregoing reasons, Defendants should be allowed to introduce the German Court Judgment/Settlement into evidence in this matter, and Plaintiff's motion *in limine* to preclude any evidence concerning the German Court Judgment/Settlement should be dismissed in its entirety.

Dated: White Plains, New York
       June 23, 2008

>                    Respectfully submitted,
>
>                    HARRINGTON, OCKO & MONK, LLP
>
>                                s/ Kevin J. Harrington
>                    By: _____
>                    Kevin J. Harrington [KH-5027]
>                    John T.A. Rosenthal [JR-4819]
>                    *Attorneys for Defendants Jennifer Gucci,*
>                    *Jenny Gucci Coffee and Gelato Company,*
>                    *Inc., Edward Litwak d/b/a Ed Litwak &*
>                    *Associates, and Gemma Gucci*
>                    81 Main Street, Suite 215
>                    White Plains, NY 10601
>                    (914) 686-4800